**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John L. HARRIS, Defendant-Appellant.**

**No. 17863.**

United States Court of Appeals
Sixth Circuit.

March 21, 1968.

Milton R. Henry, Pontiac, Mich., Len Holt, Pontiac, Mich., on brief, for appellant.

Howard E. O'Leary, Asst. U. S. Atty., Detroit, Mich., Lawrence Gubow, U. S. Atty., Detroit, Mich., on brief, for appellee.

Before CELEBREZZE and PECK, Circuit Judges, and WEINMAN, Chief District Judge.*

JOHN W. PECK, Circuit Judge.

On March 1, 1966, a three-count indictment was returned against defendant-appellant, John L. Harris, the first two counts charging unlawful possession of heroin in violation of 21 U.S.C. § 174, and the third an unlawful purchase of cocaine, in violation of 26 U.S.C. § 4704 (a). Following the denial, after an evidentiary hearing, of appellant's motion to suppress the narcotics which constitute the subject matter of the indictment, the case was tried before the District Judge without a jury. On August 18, 1966, appellant was found guilty on all three counts, and sentenced to seven years imprisonment on each, the sentences to run concurrently.

The events leading up to the instant prosecution may briefly be summarized as follows: On October 4, 1965, officers of the Narcotics Bureau of the Detroit Police Department arranged to have an informant, Nathaniel Griggs, purchase heroin from appellant at 4413 John R Street in Detroit, Michigan. Shortly after the alleged sale was completed, the police returned to the apartment at which the purchase had been made and, upon forcibly entering both the front door of the apartment building and the inner door to apartment 3, placed appellant under arrest for selling heroin in violation of the state narcotic laws. When appellant was arrested in the apartment he was, according to the arresting officers, standing over the toilet in the bathroom with a small bag of heroin in one hand, which heroin constitutes the subject matter in count one.

On December 8, Agent Irvin of the United States Bureau of Narcotics, who had assisted the state authorities in arresting appellant on October 4, swore out a complaint and had a warrant issue for appellant's arrest for the unlawful possession of the heroin seized on October 4. Narcotics were also seized from the apartment in which appellant was subsequently arrested on the federal

---

\* Honorable Carl A. Weinman, Chief Judge of the United States District Court for the Southern District of Ohio, sitting by designation.

charge on December 29, 1965. These drugs constitute the subject matter of counts two and three of the indictment.

Appellant's first contention is that the heroin allegedly seized at the time of his arrest on October 4, 1965, was improperly admitted into evidence. The admissibility of this evidence depends upon whether it was obtained as a result of a search incidental to a lawful arrest, no search warrant having been obtained. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). The lawfulness of the arrest in turn depends upon the existence of probable cause and upon the lawfulness of the manner of entry into the apartment to effect appellant's arrest.

At the pretrial hearing on appellant's motion to suppress the evidence seized at the time of his arrests on October 4 and December 29, Officer Karpinski of the Narcotics Bureau of the Detroit Police Department and Agent Irvin of the United States Bureau of Narcotics testified as to the information they had concerning appellant prior to his arrest. Officer Karpinski testified that an informant who had previously proven reliable over a two year period told him that another individual, whom the informant was accompanying at the time, had purchased heroin from a man known as "John L." at apartment 3, 4413 John R Street. This information was given Officer Karpinski in the latter part of March or early April, 1965. In the early part of June, 1965, Officer Karpinski was informed by Detroit police officers assigned to the liquor, gambling and vice detail that a man known as John L. Harris was operating a drinking and gambling establishment in the basement apartment at 4413 John R Street, and that this same man had heroin for sale in apartment 3. In the early part of September, 1965, Officer Karpinski was informed by officers of the Hold-up Bureau of the Detroit Police Department that stolen property was being exchanged for heroin at 4413 John R Street by a man known as "John L."

On October 4, 1965, the day appellant was first arrested, Officer Karpinski was introduced to Griggs by officers of the Hold-up Bureau who then had Griggs in custody. This meeting was arranged because Griggs had indicated that he wished to provide information relating to narcotics. Griggs told Officer Karpinski that he had previously taken stolen property to John L. Harris at apartment 3, 4413 John R Street, and had received heroin in exchange. At this time, Karpinski knew from the files of the Narcotics Bureau that Griggs used narcotics.

Also on October 4, Officer Karpinski talked to Donna Mixon, then in custody of the Hold-up Bureau, who told him that she had taken a stolen fur coat to John L. Harris at apartment 3, 4413 John R Street, approximately two weeks prior to that date, and that she had received heroin in exchange. Mixon, who told Karpinski that she had made other purchases of heroin from Harris in the past, had previously been employed by other officers of the police department in the capacity of an informer and had, as Karpinski had been informed, proven reliable.

At 3:20 p. m. on October 4, Griggs called Officer Karpinski and stated that he had arranged to purchase some heroin from Harris in about 20 minutes. Karpinski, accompanied by other police officers and Federal Agents Irvin and McKinney, met Griggs and after searching him for narcotics and money, and finding neither, gave him $65 in marked money with which to purchase the narcotics. Griggs was then driven by Agent McKinney to the vicinity of 4413 John R Street. Shortly after entering the apartment building, Griggs returned to the car, spoke briefly with Agent McKinney who was waiting therein, and then re-entered the building. Using the car radio, Agent McKinney informed the other officers who had the building under surveillance, and who had observed Griggs exit the building to speak with McKinney, that Harris was not in the building at that time, but that he (Griggs) would return and wait. At

approximately 7:25 p. m., appellant drove up to the building and went inside. At approximately 7:50 p. m. Griggs left the building and got into McKinney's car. McKinney informed the other officers over the car radios that the transaction had been completed.

Griggs was taken to a parking lot located a short distance from John R Street where he turned over to the federal and state authorities a tinfoil package containing a substance which, when field tested, proved to be heroin.

While at the parking lot, Griggs stated that he had been waiting in the basement apartment and that he called up to Harris and requested the narcotics after the latter entered the building. Griggs was told he would have to wait awhile. Griggs later received a phone call from Harris who said he was sending "the stuff" down with another individual. Upon opening the door to the basement apartment, Griggs saw the specified person coming down the stairs from the direction of apartment 3. The purchase was made and Griggs then left the building. After Agent McKinney and another police officer took Griggs to police headquarters, the remaining officers who had participated in the earlier surveillance returned to 4413 John R Street to arrest appellant.

Agent Irvin's testimony at the pretrial hearing was consistent with and corroborated that of Officer Karpinski. In addition, Agent Irvin testified that he had been told in August or September, 1965, by an informant previously proven reliable that drugs were being supplied to a John L. Harris at 4413 John R Street. In September, 1965, an informant who had been working with another federal narcotics agent also told Irvin that he had on prior occasions purchased heroin from John L. Harris at 4413 John R Street, both in the basement apartment and in apartment 3. Further, in making arrangements for the anticipated sale of heroin on October 4, Agent Irvin wanted to know something about Grigg's reliability before allowing Agent McKinney to ac-

company him in making the purchase so that McKinney's identity as a federal agent would not be exposed unnecessarily. Detective Jakubsczak, one of the officers who assisted in making the arrest of appellant, assured Irvin that Griggs was trustworthy, and that Griggs had given him reliable information on previous occasions.

 Appellant was admittedly arrested for the sale of heroin in violation of Michigan law. In denying appellant's motion to suppress, however, the District Court framed the issue to be decided as whether the arresting authorities had probable cause to arrest appellant for possession of heroin subsequent to the sale to informant Griggs. In setting forth his findings of fact, the District Court stated:

"So as to the arrest of October 4, I find there was probable cause on the part of the officers to believe that narcotics in the form of heroin was on the premises in Apartment B-3 at 4413 John R Street at the time the officers entered the premises, and this probable cause, without taking the time to detail all of the facts that would necessarily establish that probable cause, consisted of information received by the arresting officers over a period of several months prior to the date of searching the apartment and making the arrest, including information from various sources, and then especially the series of events that occurred on October 4th, in which the evidence indicates quite clearly that the defendant sold narcotics immediately prior or very shortly prior to the officers going to the Apartment, that he sold narcotics to an informer of the Government; and I also find that there was considerable evidence establishing the reliability of the informant, and that this had been passed on to the arresting officers."

Aside from the District Court's conclusion that the police had probable cause to believe that appellant was in possession of narcotics when arrested, the correctness of which we do not here con-

sider, the above findings are supported by substantial evidence and are not erroneous. Further, these findings provide an adequate basis for a determination by this court that the arresting officers had probable cause to believe that appellant had violated Michigan's criminal laws relating to the sale of heroin, and we so hold. Therefore, it is here determined that the arrest of appellant on October 4, 1965, was not unlawful as having been made without probable cause.

■ Appellant also claims that the lawfulness of the arrest on October 4 was vitiated by the manner of entry into the apartment. "[W]hether the forceable entry itself was illegal * * * is controlled by state law. Ker v. State of California, 374 U.S. 23, 37, 83 S.Ct. 1623, 10 L.Ed.2d 726; United States v. Wood, 341 F.2d 103, C.A. 6th." United States v. Alexander, 346 F.2d 561, 562 (6th Cir. 1965). See also Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958); United States v. Luster, 342 F.2d 763 (6th Cir. 1965). The applicable Michigan statute is Section 28.880 M.S.A., Comp. Laws 1948, § 764.21, which reads as follows:

"To make an arrest, a private person, if the offense be a felony committed in his presence, or a peace officer with a warrant or in cases of felony when authorized without a warrant, may break open an inner or outer door of any building in which the person to be arrested is or is reasonably believed to be if, after he has announced his purpose, he is refused admittance."

Upon returning to the apartment on John R Street, the police found the outer door leading to the common hallway locked. After Detective Karpinski rang the manager's bell, an unknown male came to a window near the recessed doorway to the building. When Karpinski identified himself and requested that the man open the door so that the officers might speak to the manager, the man began screaming "Police." At this time, Agent Irvin thought he detected movement in apartment 3, a window to which was also near the front doorway, so Karpinski broke the glass to the right of the door, and reached through and opened the door.

When the police reached apartment 3, Karpinski knocked on the door and twice said "John L. Harris, you're under arrest for State narcotic law. Open the door." While there was movement in the apartment at first, the apartment became silent after the second announcement. Detective Karpinski estimated that the period of time from the first announcement until entry was forced was approximately 20 seconds, while Agent Irvin estimated the time to be from one half minute to 40 seconds. Appellant testified in substance that no announcement at all was made prior to entry by the police.

Appellant's arrest was not rendered unlawful by the manner in which the police gained entrance into the hallway of the apartment building. Certainly no complaint can be made of the fact that the officers went to the front door of the building and, after identifying themselves, asked the person who appeared at a nearby window to open the door so that they might see the manager. (There is, incidentally, no evidence which suggests that the arresting officers, or at least some of them, did not intend to see the building manager prior to effecting appellant's arrest.) Thereafter, when the person to whom the police had spoken began shouting "Police," strict compliance with the provisions of section 28.880, M.S.A., would have been an idle ceremony which was not required. Moreover, the exigent circumstances that a person was shouting "Police" a short distance from the window to apartment 3 dictated that immediate action be taken on the part of the police in order to prevent appellant from escaping or resisting imminent arrest.

■■ With respect to the manner in which the officers gained entry into

apartment 3, the District Court made the following findings:

"I also find that the officers gave advance warning of their intention to arrest the defendant by calling out to him and informing him prior to breaking in the door that the officers were there for the purpose or arresting him; that the officers in fact, I think, called out three times to that effect and waited somewhere in the neighborhood [of] 40 seconds or a minute or thereabouts, and that upon the first call being made, there was a flurry of noise inside the Apartment and then things became quiet. * * * "

These findings are supported by substantial evidence and are not erroneous.

■■■ Appellant raises several points not specifically covered by the findings of the District Judge. The argument that the arresting officers had not been refused admittance is not persuasive. Refusal of admittance is not limited to affirmative denials. United States v. Chambers, 382 F.2d 910 (6th Cir. 1967); cf., United States v. Alexander, supra. Under the circumstances established in the instant case the officers were justified in believing that they had been denied admittance. The evidence also clearly shows, contrary to appellant's second contention, that the officers had reasonable grounds to believe that appellant was in apartment 3 when it was entered. Appellant's next argument, that the arrest was used solely as a pretext to get into the apartment for purposes of making an exploratory search, is not supported by the evidence and is here rejected. Finally, appellant claims that the officers did not, prior to breaking into the apartment, identify themselves as police officers. Although there was testimony at the pretrial hearing that Karpinski identified himself before demanding that the door be opened, it is not clear whether the District Judge passed upon this issue. Nevertheless, appellant's position cannot be sustained. An announcement of authority is not explicitly required by section

28.880, M.S.A., as it is under 18 U.S.C. § 3109 (1951). Moreover, even were such an announcement necessary, the converse of the well settled principle that a "declaration of purpose is implicit in a declaration of identity," (United States v. Alexander, supra, 346 F.2d at 562; United States v. Sharpe, 322 F.2d 117 (6th Cir. 1963)) would clearly be applicable here. In accordance with the foregoing, it is here determined that the state officers and federal agents complied with the provisions of section 28.-880, M.S.A. in making entry into apartment 3 on October 4, 1965, and that the manner of entry was therefore not unlawful.

Appellant next claims that he was denied a fair trial because the trial court erroneously excluded certain evidence offered at trial.

■■■ The hearing on appellant's motion to suppress was conducted on Tuesday, Wednesday and Friday of the week beginning July 24, 1966, during which time the identity of informant Griggs was known by appellant. Yet, appellant did not attempt to have Griggs testify at the hearing. Griggs was subsequently called as a witness for the defense at trial. However, because his testimony related solely to the issue of probable cause which had previously been raised and decided, the trial judge sustained an objection to his testimony. We cannot hold that the District Court abused its discretion at the time of trial in refusing to take additional evidence on the issue of probable cause "in the absence of any offer of important new evidence of which appellant * * * [was] not aware at the time of the preliminary hearing. United States v. Wheeler, 172 F.Supp. 278 (W.D.Pa.1959), aff'd, 275 F.2d 94 (3d Cir. 1960); Waldron v. United States, 95 U.S.App.D.C. 66, 219 F.2d 37 (1954)." United States v. Conti, 361 F.2d 153, 158 (2d Cir. 1966).

■■■ The District Judge also sustained an objection on the ground of relevancy to the introduction at trial of the Detroit Police Department's com-

posite criminal record of Griggs. Appellant's counsel informed the trial judge that the record was offered to impeach the testimony of witnesses who had previously testified However, neither the identity of the witnesses intended to be impeached, nor the nature of their testimony, was disclosed We find no error in the District Court's ruling.

There being no error with respect to appellant's conviction under count one of the indictment, the judgment of the District Court as to that count is affirmed. Since the sentences imposed under the judgments of conviction on counts two and three run concurrently with the sentence imposed under count one, it is unnecessary to review the alleged errors concerning appellant's convictions under counts two and three. Hirabayashi v. United States, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774 (1943); United States v. Irons, 369 F.2d 557 (6th Cir. 1966), and cases cited therein.

Affirmed.