770 F.2d 167
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES OF AMERICA, PLAINTIFF-APPELLEE,
v.
EUGENE HARDIN, SR. (84-5643), EUGENE HARDIN, JR. (84-5644);
PAUL A. BISIC, JR. (84-5736); NORVIN E. GREEN, III
(84-5737), DEFENDANTS--APPELLANTS.
 NOS. 84-5643, 84-5644, 84-5736, 84-5737
 United States Court of Appeals, Sixth Circuit.
 7/10/85
 
 W.D.Ky.
 AFFIRMED
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY
 BEFORE: CONTIE and MILBURN; Circuit Judges; and WEICK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendants Eugene Hardin, Sr., Eugene Hardin, Jr., Paul A. Bisig, Jr., and Norvin E. Green, III, appeal their convictions for conspiracy to manufacture and distribute methaqualone in violation of 21 U.S.C. Secs. 841(a)(1) and 846. For the reasons that follow, we affirm the convictions in all respects.
 
 I.
 
 2
 In March of 1983, law enforcement officers with the F.B.I., the City of Jeffersontown, Kentucky, and Jefferson County, Kentucky, received the following information. First, the officers were told by a reliable informant that he had overheard a conversation during which defendant Eugene Hardin, Sr., stated that he (Hardin, Sr.) was involved in a venture with co-defendant Paul A. Bisig, Jr., and co-defendant Harry Boyer manufacturing methaqualone in a laboratory in a house in a rural area outside Jeffersontown, Kentucky, and that Boyer was renting the house. Second, another reliable informant also told the F.B.I. that Hardin, Sr., was involved in constructing a laboratory for the production of methaqualone. Third, the government was informed by LaGrange Tool and Die that two white males, one identified as Hardin, Sr., had acquired a die for a pill press on November 16, 1982.
 
 
 3
 The officers conducted their own investigation which revealed that Boyer had electrical service installed at 11302 Easum Road on the outskirts of Jeffersontown and that Boyer was not the property owner at that address. Jefferson County officers observed a 1979 Chevrolet displaying license number ELT-159 at the Easum Road address. (The officers subsequently discovered that a vehicle of the same description with license number ELT-154 was registered to Bisig.) Finally, the officers observed Hardin, Sr., and Boyer at the Easum Road address.
 
 
 4
 Based on this information, the law enforcement officers obtained a search warrant from a Jefferson County circuit judge. The warrant commanded a search of the premises at '11302 Easum Road' and described the premises to be searched as follows: 'Story and half red brick dwelling with attached family room on rear. (See attached picture).'
 
 
 5
 The search conducted pursuant to the warrant revealed a complex, working laboratory for the production of methaqualone tablets. The officers seized chemicals in an amount estimated to be sufficient to produce Two Million, Five Hundred Thousand Dollars ($2,500,000.00) worth of finished methaqualone tablets, along with an estimated Eight Hundred Thousand Dollars ($800,000.00) worth of finished products. Fingerprints matching those of defendant Green and all of the other defendants were found, as well as personal mail belonging to Green and a chemical formula allegedly in Green's handwriting. In addition, approximately Forty Thousand Dollars ($40,000.00) worth of stolen silverware was seized.
 
 
 6
 Thereafter, defendant Bisig appeared before a federal grand jury pursuant to a subpoena where he asserted his Fifth Amendment privileges. On April 18, 1983, the district court entered an order granting Bisig immunity from prosecution based on his testimony or any evidence derived therefrom ('use immunity'). Bisig continued to refuse to answer any questions before the grand jury, and, accordingly, on April 20, 1983, Bisig was held in contempt, denied bail and ordered incarcerated until such time as he agreed to testify pursuant to the Recalcitrant Witness Statute, 28 U.S.C. Sec. 1826.
 
 
 7
 On June 20, 1983, defendants Hardin, Sr., Hardin, Jr., and Green were indicted by the grand jury. The grand jury also named defendants Bisig and Boyer as unindicted co-conspirators. On February 28, 1984, the same grand jury indicted Bisig and Boyer as defendants in the conspiracy. The last day of the grand jury's term was February 29, 1984.
 
 
 8
 Responding to pre-trial motions, the district court ordered the stolen silverware suppressed from evidence. The court further held that the search warrant was valid and refused to grant Bisig's motion to dismiss due to alleged prosecutorial misconduct.
 
 
 9
 Thereafter, Bisig, Green and Boyer entered pleas of guilty, reserving the right to appeal the court's disposition of the pre-trial motions pursuant to Fed. R. Crim. P. 11(a)(2). Hardin, Sr., and Hardin, Jr., were found quilty by jury verdicts. The appeals were thereafter consolidated although Boyer is not a party to this appeal.
 
 II.
 
 10
 The parties have urged the following grounds for reversal of their convictions.
 
 
 11
 A. Validity of Search Warrant.
 
 
 12
 Defendant Green argues that the search warrant was invalid on its face because it failed to accurately describe the premises to be searched such that there was a 'reasonable probability that another premises might [have been] mistakenly searched.' United States v. Votteller, 544 F.2d 1355, 1363 (6th Cir. 1976) (quoting United States v. Darensbourg, 520 F.2d 985, 987 (5th Cir. 1975)). Green argues that there are three separate residences at 11302 Easum Road and further that the photograph attached to the warrant showed at least one other building than the one to be searched.
 
 
 13
 The test for determining whether a search warrant sufficiently describes the place to be searched was stated long ago by the Supreme Court: 'It is enough if the description is such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended.' Steele v. United States, 267 U.S. 498, 503, 45 S. Ct. 414, 416 (1925). We hold that the search warrant in this case satisfies the Steele test. Although the warrant and the photograph may have left some possibility that one of the other buildings at 11302 Easum Road could have been searched, such does not arise to a probability. The officers executing the warrant had the house under surveillance and knew which structure was to be searched. See, e.g., United States v. Gitcho, 601 F.2d 369, 372 (8th Cir.) (permissible factor in upholding search warrant is fact that premises had previously been under surveillance), cert. denied, 444 U.S. 871 (1979). See also United States v. Hassell, 427 F.2d 348 (6th Cir. 1970) (per curiam) (noting that three officers ramained at the premises while another left to procure the warrant). Under these circumstances the officers executing the warrant could (and did) 'with reasonable effort ascertain and identify the place intended.'
 
 
 14
 B. Sufficiency of Affidavit to Establish Probable Cause.
 
 
 15
 Defendants Green and Bisig argue that the affidavit in support of the search warrant does not establish probable cause on its face. More particularly, they argue that there is no indication as to how one of the informants acquired his information and that the corroboration of the other informant's information is based on purely innocent activity. Defendants further assert that the information regarding the purchase of the die for the pill press was stale.
 
 
 16
 '[S]o long as the magistrate had a 'substantial basis for . . . concluding[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more.' Illinois v. Gates, 462 U.S. 213, ----, 103 S. Ct. 2317, 2331 (1983) (quoting Jones v. United States, 362 U.S. 257, 271, 80 S.Ct. 725, 736 (1960)). The magistrate's determination of probable cause should be given 'great deference,' and the review should not be de novo. Id.
 
 
 17
 Pursuant to these standards, we affirm the district court's finding that the affidavit was sufficient. Under the 'totality of the circumstances,' Gates, supra, the search warrant sufficiently demonstrates probable cause to believe 'that an offense had been committed and that evidence thereof would be found on the premises to be searched.' United States v. Besase, 521 F.2d 1306, 1307 (6th Cir. 1975) (citations omitted).
 
 
 18
 The affidavit establishes direct evidence from two reliable informations that defendants were engaged in an illegal drug manufacturing venture at the Easum Road address. This information was corroborated by the defendants' presence at that address and by the purchase of the die for a pill press. In view of the fact that the criminal activity herein consisted of an elaborate drug manufacturing laboratory, which was certainly not a fleeting enterprise, the five months' lag between the receipt of the information concerning the defendants' acquisition of the die for the pill press and the issuance of the warrant does not justify a finding that the information was too stale for consideration. See United States v. Webster, 734 F.2d 1048, 1056 (5th Cir.), cert. denied, 105 S. Ct. 565 (1984). Finally, the contention that some of the information supplied in the affidavit represents 'innocent' behavior is not relevant. What is important is that the information provided a basis for a showing of probable cause. See Gates, supra, 103 S. Ct. at 2335 n. 13.
 
 
 19
 C. Prosecutorial Misconduct.
 
 
 20
 Defendant Bisig argues that his indictment on February 28, 1984, immediately prior to his impending release on February 29, 1984 (last day of grand jury's term), as a civil contemptor demonstrates prosecutorial vindictiveness. Bisig first notes that at the time of the indictment his release from incarceration was imminent pursuant to the terms of the statute. See 28 U.S.C. Sec. 1826(a)(2) (providing that the confinement shall not exceed the life of the term of the grand jury). He argues that prosecutorial vindictiveness is demonstrated because the government declined to indict him while he was incarcerated for contempt even though there was sufficient evidence to do so and instead waited until his term of confinement was due to expire. Bisig asserts the government was retaliating against him for asserting his legal right to release upon expiration of the grand jury's term.
 
 
 21
 It is clear that 'an individual . . . may not be punished for exercising a protected statutory or constitutional right.' United States v. Goodwin, 457 U.S. 368, 372, 102 S. Ct. 2485, 2488 (1982). However, Bisig was not exercising a protected statutory right at the time of his indictment. Because the grand jury's term had not yet expired, no right to release existed. Furthermore, at all times while he was incarcerated, Bisig held the proverbial keys to the jailhouse door. Since Bisig was not exercising a protected right, there is no basis to presume an improper vindictive motive on the part of the prosecutors. See Goodwin, supra, 457 U.S. at 373, 102 S. Ct. at 2488. Furthermore, this is not a case 'in which a reasonable likelihood of vindictiveness exists.' Id. We believe the prosecutors were properly acting within their authority at all times.
 
 
 22
 D. Sufficiency of the Evidence.
 
 
 23
 Before reviewing the arguments advanced by defendants Hardin, Sr., and Hardin, Jr., as to the sufficiency of the evidence, we note that the following standard governs:
 
 
 24
 In evaluating a claim that the evidence is insufficient to support a conviction, the court must weigh the evidence in the light most favorable to the prosecution and determine whether a reasonable mind might fairly find guilt beyond a reasonable doubt. United States v. Gibson, 675 F.2d 825, 829 (6th Cir. 1982), cert. denied, 459 U.S. 972, 103 S.Ct. 305, 74 L.Ed.2d 285 (1982). The evidence to be considered may include circumstantial proof and reasonable inferences drawn from the evidence. United States v. Flaherty, 668 F.2d 566, 579 (1st Cir. 1981).
 
 
 25
 United States v. McCullah, 745 F.2d 350, 354 (6th Cir. 1984).
 
 
 26
 Defendants first argue that the convictions cannot stand because the government failed to prove that one of the conspirators knowingly committed an overt act and that the overt act was knowingly done in furtherance of the conspiracy, citing United States v. Myers, 646 F.2d 1142, 1143-44 (6th Cir. 1981). However, Myers is not applicable to this cause because there is no requirement to charge an overt act in an indictment pursuant to 28 U.S.C. Sec. 846, although if one is charged, it must be proven. United States v. Dempsey, 733 F.2d 392, 395-96 (6th Cir.), cert. denied, 105 S. Ct. 389 (1984).
 
 
 27
 Since no overt acts were charged in the instant case, the government only needed to prove (1) that a conspiracy as described in the indictment was willfully formed and in existence at or about the time alleged and (2) that the accused willfully became a member of the conspiracy. As to the first element, we note that '[p]roof of some kind of formal agreement is not necessary to establish a conspiracy; to the contrary, the existence of a conspiracy may be inferred from acts done with a common purpose.' United States v. Ayotte, 741 F.2d 865, 864 (6th Cir.), cert. denied, 105 S. Ct. 574 (1985).
 
 
 28
 As to Count 1 (conspiracy to manufacture), the evidence is overwhelming that such a conspiracy existed. Evidence of numerous acts done with the common purpose of manufacturing methaqualone was presented from which the jury could infer the existence of a conspiracy. Furthermore, there was sufficient evidence from which the jury could find that both Hardin, Sr., and Hardin, Jr., willfully became members of the conspiracy. Once the conspiracy has been established, only slight evidence is necessary to connect a defendant with it. United States v. Chambers, 382 F.2d 910, 913 (6th Cir. 1967). As to Hardin, Sr., evidence connecting him to the conspiracy was presented in the form of testimony by employees of LaGrange Tool and Die that Hardin, Sr., procured equipment used in the laboratory, as well as fingerprints and surveillance placing him at the laboratory. Evidence connecting Hardin, Jr., to the conspiracy included fingerprints placing him at the laboratory, testimony that Hardin, Jr., picked up and delivered various items used in the laboratory, and testimony that Hardin, Jr., stated that the laboratory manufactured 'quaaludes.'
 
 
 29
 Having determined that the evidence is sufficient to sustain the convictions of both Hardins under Court 1 of the indictments, and since the sentences imposed for the convictions under Count 2 run concurrently with the convictions under Court 1, it is unnecessary to review the sufficiency of the evidence concerning Court 2. See United States v. Harris, 391 F.2d 384, 390 (6th Cir. 1968) and cases cited therein.
 
 
 30
 E. Co-Defendant Evidence.
 
 
 31
 Defendants Hardin, Sr., and Hardin, Jr., next argue that the court erred in refusing to exclude, pursuant to Federal Rule of Evidence 403, evidence that pertained to co-defendants Green, Boyer and Bisig, who had already pleaded guilty. The Hardins argue that the totality of the individualized testimony related only to acts done by the co-defendants who were not on trial.
 
 
 32
 Under Rule 403, the admission of evidence challenged as prejudicial is within the sound discretion of the trial court. See, e.g., United States v. Brady, 595 F.2d 359, 361 (6th Cir.), cert. denied, 444 U.S. 862 (1979). The reviewing court must look at the evidence in a light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect. Id.
 
 
 33
 Under these standards, defendants' argument must fail. The evidence relating to the co-defendants not on trial was not only highly probative, but quite necessary in order for the government to establish the existence of the conspiracy. Against this value, the trial court weighed the prejudice to the defendants in the jury's hearing evidence relating to the other co-defendants who were not on trial. In holding the evidence admissible, the district court did not abuse its discretion.
 
 
 34
 F. Jury Contact.
 
 
 35
 Defendant Hardin, Sr., argues that the trial court erred in not declaring a mistrial after an attorney for the United States spoke to the jury out of the presence of the court and defense counsel. The incident occurred when the jury and counsel for the parties went to view evidence seized from the Easum Road house but which was not introduced in court. The jurors and the United States Attorney apparently arrived at the site ahead of defense counsel. At that point, the U. S. Attorney informed the jurors that no smoking was allowed and that questions were to be written down and given to the court. Defendant argues that as innocuous as this exchange appears, the U. S. Attorney obtained an unfair advantage in appearing to the jury as a figure of sincerity and trust.
 
 
 36
 Although such unilateral contact between the jurors and counsel for either party is improper (as admitted by the government), the incident involved herein and the district court's ruling thereon constitute harmless error and are not sufficient grounds for a mistrial or new trial.
 
 
 37
 G. Testimony Concerning Excluded Evidence.
 
 
 38
 Both Hardins argue that they were entitled to a mistrial after two separate witnesses made mention of the silverware, which the court had earlier ordered to be excluded from evidence. Any error in this connection was harmless. The references were inadvertent and did not describe the silverware as stolen. Thus the jury was not in any way alerted to any irrelevant criminal activity which could have prejudiced the defendants.
 
 
 39
 H. Jencks Act Material.
 
 
 40
 The final argument advanced by defendants Hardin, Sr., and Hardin, Jr., is that the court committed reversible error in failing to order the government to deliver to defense counsel statements made by the government's witness, Coy Daniels, pursuant to the Jencks Act, which provides in relevant part:
 
 
 41
 (b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.
 
 
 42
 * * *
 
 
 43
 * * *
 
 
 44
 (e) The term 'statement', as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means--
 
 
 45
 (1) a written statement made by said witness and signed or otherwise adopted or approved by him;
 
 
 46
 (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or
 
 
 47
 (3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.
 
 
 48
 18 U.S.C. Sec. 3500(b) and (e).
 
 
 49
 Following Daniels' testimony, the defense duly requested any Jencks Act material. The trial court reviewed the material, which consists of an F.B.I. Form 302 prepared by an agent from notes taken while interviewing Daniels. The court determined that the material was not covered by the Jencks Act and ordered the information filed under seal for review by this court.
 
 
 50
 Whether material must be produced under the Jencks Act is a question of fact within the discretion of the trial court. United States v. Cuesta, 597 F.2d 903, 914 (5th Cir.), cert. denied, 444 U.S. 964 (1979); see also United States v. Stephens, 492 F.2d 1367, 1377 (6th Cir.), cert. denied, 419 U.S. 852 and 874 (1974). We have reviewed the material and concluded that the trial court's determination that the information contained on the Form 302 is not Jencks Act material is not clearly erroneous.
 
 III.
 
 51
 For the reasons stated, the convictions of defendants Eugene Hardin, Sr., Eugene Hardin, Jr., Paul A. Bisig, Jr., and Norvin E. Green, III, are AFFIRMED.