772 F.2d 908
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES OF AMERICA, PLAINTIFF-APPELLEE,
v.
CHARLES AMADI 984-5575); SYLVESTER DIMGBA (84-5609),
DEFENDANTS-APPELLANTS.
 NOS. 84-5575, 84-5609
 United States Court of Appeals, Sixth Circuit.
 8/15/85
 
 W.D.Ky.
 AFFIRMED
 On Appeal from the United States District Court for the Western District of Kentucky
 Before: KENNEDY and CONTIE, Circuit Judges; and GILMORE,* District Judge.
 PER CURIAM.
 
 
 1
 Defendants Amadi and Dimgba appeal their convictions for violations of 8 U.S.C. Sec. 1001 (concealment of a material fact) and 18 US.C. Sec. 371 (conspiracy). Amadi was convicted on three substantivecounts--concealing the actual purpose of his marriage, concealing the actual purpose of one Goff's marriage, and aiding and abetting the concealment of the actual purpose of Dimgba's marriage. Dimgba was convicted on one substantive count. Each was convicted of conspiracy to defeat the immigration laws and obtain permanent residency through such concealments. Amadi was given four sentences of one year and one day, to be served concurrently. Dimbga was given two concurrent three-year sentences, all but thirty days of which were suspended.
 
 
 2
 Amadi and Dimgba are Nigerian citizens who were in the United States on student visas and attending school in Kentucky. The government alleged that, in order to stay in the United States, Amadi and Dimgba entered into marriages with U.S. citizens and Amadi aided the other defendants in doing the same. They, together with two other defendants who pleaded guilty, were indicted for conspiracy to violate 18 U.SC. Sec. 1001 which makes it a crime, in any matter within the jurisdiction of an agency or department of the United States, to 'falsify, conceal, or cover up by trick, scheme, or device a material fact.' They were also indicted for the substantive offense. The indictment charged that the material fact which was concealed was the 'actual purpose' of defendants' marriages, which, the indictment charges, was to defeat the immigration laws in order to gain permanent residency status.
 
 
 3
 At trial, there was conflicting evidence regarding the nature of the marriages. There was evidence from which the jury could conclude that the defendants' intent and purpose in entering into the marriages was to secure permanent residency status to be followed by dissolution of the marriage.[1] There was also evidence from which the jury might conclude that the marriages were genuine, in the sense that the efendants did indeed enter into a relationship fully intending to live together as husband and wife and to continue their marital status indefinitely. In accordance with the indictment, the District Court instructed the jury that it could find the defendants guilty if it found that defendants willfully and knowingly concealed a material fact--the 'actual purpose' of the marriages--and knew that the concealment was to defeat the immigration laws in order to gain permanent residency.[2]
 
 
 4
 Defendants challenge the use of the words 'actual purpose' in the indictment and jury instructions. Defendants claim that the jury should have been instructed that a violation could be found only if the 'sole purpose' of the marriages was to defeat the immigration laws; in other words, that there could be a concealment of a material fact only if the marriage was found to be one which both parties to the marriage intended to dissolve when its deceitful task had been completed.
 
 
 5
 The distinction between 'sole' and 'actual' purpose, however, is a superficial one which ignores the background against which the instructions were given and distorts the meaning of the instructions as they were surely understood by the jury. Both sides knew that the indictment charged the defendants with concealing the 'actual purpose' of the marriages. At trial, the government's entire case was an attempt to prove that defendants entered into the marriages for the purpose of obtaining residency status and with the intent to dissolve the marriage once permanent residency status had been attained. The defendants' proof, for the most part, addressed the same question. Defendants tried to show that they always intended to be married as marriage is traditionally understood and not with the intent to dissolve the marriage when it had served its purpose of giving them permanent residency status.
 
 
 6
 It cannot be supposed that the jury interpreted its instructions without reference to this context. Employing the words 'actual purpose' was simply a way of communicating to the jury that it must decide whether the defendants acted with the intent 'to enter into the marriage relationship as it is commonly understood,' Lutwak v. United States, 344 U.S. 604, 613 (1953), or whether their overriding purpose was to use the marriages as merely a tool of deception to evade the immigration laws. Lutwak makes clear that regardless of the legal validity of a marriage, an intent that the marriage be a short-term sham, as opposed to the intent which normally accompanies a marriage,[3] may be the basis for a concealment conviction. The jury knew that this was the issue being tried, and we do not believe that the use of the words 'actual purpose' would have obscured that issue.[4]
 
 
 7
 In the same vein, defendants argue that the purpose of getting permanent resident status and a green card is not inconsistent with entering into a marriage for all the traditional purposes, that the parties can have dual purposes, and that the failure to instruct the jury that, if the defendants' marriages also had the purpose of undertaking a life together and assuming marital duties, they would not be guilty. Defendants, however, did not request that instruction. We may reverse only upon a finding that the failure to give such an instruction was plain error affecting substantial rights of the defendant. Fed. R. Crim. P. 52(b). We are satisfied that in the context of the entire trial the jury understood that the issue was whether these marriages were entered into for the usual reasons persons marry or were a scheme or trick to defeat the immigration laws. The government submitted evidence that defendants' purpose in these marriages was to secure permanent resident status while defendants submitted evidence of other purposes for the marriages. The arguments of counsel focused on that conflicting evidence. The court instructed the jury that the government had to prove that by a trick or scheme defendants concealed a material fact, that is, the actual purpose of the marriage, in order to defeat the immigration laws to gain permanent residency status. The word 'actual' means both 'real' and 'substantial.'
 
 
 8
 Viewing the entire record, we do not believe the jury did not understand what it was to decide. See Western Air Lines, Inc. v. Criswell, 105 S. Ct. 2743 (1985).
 
 
 9
 Defendants also argue that the government was required to prove that both parties to each marriage must have entered into the marriage with the intent to defeat the immigration laws and that the failure to instruct the jury with respect to the intent of both spouses was error. We reject this argument. The intent of the other spouses is not relevant to whether defendants concealed their own intent that the marriage had this purpose. Marriage is a mutual undertaking. One spouse's intent not to commit himself or herself to the marriage vitiates that mutuality. It was sufficient for the government to prove the actual purpose of the defendants and the person Amadi aided and abetted.
 
 
 10
 Defendant Dimgba also raises the issue of whether the evidence in the case proved multiple conspiracies rather than the single conspiracy charged in the indictment. Defendants received concurrent sentences on the conspiracy and substantive counts. Under these circumstances it may be unnecessary to consider the validity of the conspiracy conviction. See United States v. Harris, 391 F.2d 384 (6th Cir. 1968). But see Ball v. United States, 105 S. Ct. 1668 (1985). However, we find that under the instructions defendants were not convicted of multiple conspiracies.
 
 The jury was charged:
 
 11
 You are instructed that each of the defendants is charged with having entered into a conspiracy in Count 1 to commit an offense against the United States, which conspiracy is alleged to have been the knowing, willful and unlawful falsification, concealment, or cover up by trick, scheme, or device a material fact, that is, the actual purpose for the marriages entered into about which you have heard evidence, in order to defeat the laws of the Immigration and Naturalization Service of the United States, and in order to gain permanent residence for the defendants in the United States.
 
 
 12
 While the evidence may not have permitted a finding that the conspiracy between Amadi and Dimgba was as broad as that alleged in the indictment, there was evidence that they conspired to arrange Dimgba's marriage for the purpose charged in the indictment and to conceal that purpose. That evidence permitted conviction under the court's charge. The court specifically charged the jury that it must find a single conspiracy:
 
 
 13
 What you must do is determine whether the single conspiracy charged in the indictment existed between two or more conspirators. If you find that no such conspiracy existed, then you must acquit the defendants as to that charge.
 
 
 14
 The fact that the conspiracy proved against both defendants was narrower than that charged in the indictment is not a factual variance. The Court recently had occasion to hold that convictions may be sustained as long as the proof upon which they are based corresponds to an offense that is clearly set out in the indictment. See United States v. Miller, 105 S. Ct. 1811 (1985). Miller was charged with defrauding his insurance company by consenting to a burglary and by lying to his insurance company about the value of the loss. The evidence at trial was restricted to the latter. The entire indictment was given to the jury. The court of appeals reversed his conviction on the grounds that the grand jury might not have indicted him for only part of the scheme to defraud. The Supreme Court reversed. The facts proved at trial conformed to one of the theories of the offenses contained in the indictment giving Miller notice:
 
 
 15
 As long as the crime and the elements of the offense that sustain the conviction are fully and clearly set out in the indictment, the right to a grand jury is not normally violated by the fact that the indictment alleges more crimes or other means of committing the same crime.
 
 
 16
 Id. at 1815. Although Miller did not involve a conspiracy, it relied upon conspiracy cases, e.g., Ford v. United States, 273 U.S. 593 (1927), and its reasoning is equally applicable to conspiracy.
 
 
 17
 The fact that the indictment here charged more than was necessary did not violate defendants' rights. It still charged a conspiracy with the same purpose. There was only a failure to prove that all of the overt acts alleged were in furtherance of the Amadi-Dimgba agreement.
 
 
 18
 Defendants also assert that the court should have granted a motion for mistrial after other defendants pleaded guilty and were removed from the case. The court instructed the jury that the guilt or innocence of each defendant was to be considered separately. It did not abuse its discretion in denying the motion for mistrial. See United States v. Johnson, 584 F.2d 148 (6th Cir. 1978), cert. denied, 440 U.S. 418 (1979).
 
 
 19
 We have examined defendants' other claims and find them without merit.
 
 
 20
 The judgment of the District Court is affirmed.
 
 
 21
 CONTIE, Circuit Judge, concurring in part and dissenting in part.
 
 
 22
 Although I join the remainder of the majority opinion, I dissent from that portion of the opinion upholding the conspiracy conviction of defendant Dimgba. First, since it is unclear whether or not Dimgba will suffer adverse collateral consequences stemming from the conspiracy conviction, I would not apply the concurrent sentence doctrine. Use of this doctrine is discretionary with an appellate court rather than mandatory. See Benton v. Maryland, 395 U. S. 784, 791 (1969); Ethridge v. United States, 494 F.2d 351 (6th Cir.), cert. denied, 419 U.S. 1025 (1974). In view of the inadequate record regarding the possibility of adverse collateral consequences, I would not exercise discretion in the same manner as the majority.
 
 
 23
 Second, I agree with defendant Dimgba that the government proved multiple conspiracies at trial instead of only one conspiracy as alleged in the indictment. Although the government produced sufficient evidence of separate conspiracies between Amadi, Dimgba and Pavlas and between Amadi, Goff and Crowe, the government never established a connection between Dimgba and the latter conspiracy. The conspiracies in this case were not of the type that a participant would necessarily have known that other unknown persons were involved. Other than Amadi, the parties to one conspiratorial agreement had no interest in the outcome of the other agreement. A single conspiracy is not demonstrated, of course, merely by proof that several people agreed with a common defendant (i.e., Amadi) to do something illegal. See Kotteakos v. United States, 328 U.S. 750 (1946). In fact, a conspiracy conviction should be reversed if the 'only nexus among [co-defendants] lies in the fact that one man participated in all' of the agreements. Id. at 773. That is precisely the situation on this record. Moreover, I regard the evidence of the Amadi-Goff-Crowe conspiracy prejudicial as to Dimgba. See id. at 774. Since the government's evidence showed two conspiracies rather than only one as alleged in the indictment, the jury was not entitled to convict Dimgba of conspiracy.
 
 
 24
 The recent Supreme Court decision in United States v. Miller, 53 U.S.L.W. 4446 (U.S., filed April 1, 1985), is inapposite. The Miller indictment, which did not allege conspiracy, charged that the defendant had violated 18 U.S.C. Sec. 1341 (mail fraud) in two ways. The defendant was convicted of mail fraud under one of these theories. Thus, the indictment had fully set forth the crime for which the defendant was convicted. In contrast, the indictment in the present case alleged (as has already been indicated) a different conspiracy than the two conspiracies demonstrated by the evidence. Unlike the defendant in Miller, Dimgba was not convicted of a crime that had been alleged in the indictment. Nor was Dimgba convicted of a 'narrower' version of a crime alleged in the indictment. The majority's analysis of Miller is incompatible with the Supreme Court's decision in Kotteakos. Absent instruction from the Supreme Court that Miller implicitly overruled Kotteakos, I believe that Dimgba's conspiracy conviction must be reversed. Accordingly, I respectfully dissent from that portion of the majority's opinion upholding the conspiracy conviction of defendant Dimgba.
 
 
 
 *
 Honorable Horace W. Gilmore, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Viewed in the light most favorable to the government, the evidence established that Amadi arranged a marriage for his girlfriend, Ms. Goff, with one Roy William Crowe. Ms. Goff was also an alien who was in the United States on a student visa. Crowe and Ms. Goff never consummated the marriage or lived together. Crowe was paid approximately $400 for marrying Ms. Goff. Amadi drove Crowe and Ms. Goff to a neighboring town where the marriage took place and paid for the blood test, the marriage license and the judge who performed the marriage. Crowe testified that the only reason for the marriage was so that Ms. Goff could remain in the United States. Ms. Goff continued to live with Amadi after the marriage to Crowe, as she had before. Crowe also testified that Amadi completed the forms for the Immigration Service in which Crowe requested permanent resident status for his wife
 Amadi arranged a marriage for himself to Christi Kirkpatrick. She testified that she never lived with Amadi after the marriage although she had had sexual relations with him on one occasion just before the marriage. Amadi promised her $5,000 and/or a car. She was only paid a total of $160, however. Nancy Dimgba testified that Amadi arranged for her to marry one of his friends. No name was mentioned and it was not until Amadi drove her to Springfield, Tennessee for the marriage that she learned that the groom would be defendant Dimgba. She had met Dimgba on prior occasions since he was a friend of her former husband's. Nancy Dimgba testified that Amadi mentioned divorce when they were discussing her marrying his friend and that they would have had to stay married the three to four months that it would take to get a green card (resident alien card). She and Dimgba were still married at the time of trial although they lived separately. Amadi mentioned paying her a sum of money but she never received anything. In each instance a request for permanent residency status was made very shortly after the marriage.
 
 
 [2]
 18 U.S.C. Sec. 1001 includes two distinct offenses, false representation of a material fact and concealment of a material fact. See United States v. Diogo, 320 F.2d 898, 902 (2d Cir. 1963). False representation requires 'proof that the defendant knowingly made a false or fraudulent statement,' United States v. Tobon-Builes, 706 F.2d 1092, 1096 (11th Cir. 1983), while concealment requires 'proof of willful nondisclosure by means of a trick, scheme, or device.' Diogo, supra, at 902. The charge to the jury in the instant case was confined to the concealment aspect of the statute
 
 
 [3]
 'The common understanding of a marriage . . . is that the two parties have undertaken to establish a life together and assume certain duties and obligations.' 344 U.S. at 611
 
 
 [4]
 We do not wish to be misunderstood as suggesting that the 'actual purpose' of a marriage is normally a proper subject for government inquiry. Persons marry for widely varying reasons, and 18 U.S.C. Sec. 1001 does not enable the government to compel a person to disclose the purpose of a marriage on pain of prosecution for concealment if he or she refuses to do so. Such a practice would implicate important privacy rights. It is only when that purpose is to defeat the immigration laws or other laws that concealment is prohibited