**UNITED STATES of America**

v.

**Thomas A. BUSS.**

**Crim. No. 78–58.**

United States District Court,
W. D. Pennsylvania.

Nov. 22, 1978.

John P. Garhart, Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

John W. Murtagh, Jr., Pittsburgh, Pa., for defendant.

## OPINION

MARSH, District Judge.

Defendant Thomas A. Buss was found guilty by a jury of illegally engaging in the business of dealing in firearms, in violation of 18 U.S.C. § 922(a)(1).[1] Defendant has moved for judgment of acquittal, or in the alternative, for a new trial. The motion will be denied.

To convict a defendant under § 922(a)(1), the government must prove that the person was unlicensed and that he was engaged in the business of dealing in firearms. There is no doubt that Buss was unlicensed, and there is ample evidence from which a jury could find beyond a reasonable doubt that the defendant was engaged in the business of dealing in firearms.

The government proved that Buss arranged for the transfer of more than 140 weapons. These transfers were made at the request of Buss by two licensed firearms dealers, Paul G. Acken and Anthony J. Terrana. Both Acken and Terrana testified that Buss had ordered firearms using their federal licenses. Acken explained that:

"Buss did his own buying and selling. All I did was receive [the firearms] and fill out the forms for him."

(Tr. 22). Similarly, Terrana testified that Buss procured the weapons while Terrana simply completed the required papers. According to Terrana, Buss indicated that after he procured the weapons he sold them at gun shows in Pennsylvania and Ohio. Terrana also testified that Buss said that if he were federally licensed the record keeping requirements would interfere with his manner of selling weapons at such gun shows (Tr. 68).

There was substantial evidence to show that Buss also sold firearms on a mail order basis. Several gun purchasers testified that they had ordered firearms from Buss and made payments to Buss but that the firearms were sent to them through a third-party who was a licensed dealer. H. L. Weinstein testified that he ordered a gun from Buss after seeing Buss' advertisement in *The Shotgun News.* Weinstein sent a check for $460.00 to Buss and received the weapon from Acken's Gun Shop (Tr. 80–82). Two other witnesses testified that after correspondence with Buss they purchased weapons by making payments to Buss and subsequently receiving the weapons through licensed firearms dealers (Tr. 83–84, 88). Acken testified about additional transactions in which Buss made the arrangements for the sales and then brought the weapons to Acken to have them shipped to purchasers (Tr. 40–52).

The government also presented evidence to show that during a search of the Buss residence federal agents discovered only two weapons but found substantial documentary evidence indicating that Buss engaged in the business of dealing in firearms. This evidence included advertisement copy which had appeared in *The Shotgun News* announcing that Buss had M1A Assault Rifles for sale [2] and extensive price

---

1. Section 922(a)(1) provides in pertinent part:
 "(a) It shall be unlawful—(1) for any person except a . . . . licensed dealer, to engage in the business of . . . dealing in firearms . . . .."

2. GX No. 159 is an advertisement which appeared in *The Shotgun News* of December 1, 1976. It gave a detailed description of the M1A Assault Rifle and concluded:
 "The M1A Assault Rifle fulfills the particular needs of mobile police officers and travelers who encounter dangers, because it is designed for convenient vehicle stowage and modern assault rifle shooting techniques. The price of the M1A Assault Rifle is $460.00 postpaid. The price includes two 20-round magazines, a pair of combined M1 slings, and front and rear rotating swivels. Send a certified check or a money order and an endorsed Federal Firearms License to TOM BUSS, 635 Marion Avenue, Springdale, Pennsylvania 15144."

lists for items, including firearms, which were for sale by Tom Buss at his home address (GX Nos. 158, 160; Tr. 99).

Additional evidence presented by the government from the Buss residence included: a copy of a manual about the M1A Match Rifle which states that the rifle could be purchased from Buss; a newsletter wherein the defendant reported that he had attended a gun show in Ohio and had sold several firearms there; and, a receipt for 26 M1A firearms purchased by Buss from the Springfield Armory for a total of $6,700.00 (GX No. 155).

■ This court finds that the government's evidence was more than sufficient to prove that the defendant had engaged in the business of dealing in firearms. In fact, the defendant's illegal activity was more substantial than that upon which a number of other convictions under this statute have been sustained. *See, e. g., United States v. Swinton,* 521 F.2d 1255, 1256–1258 (10th Cir. 1975); *United States v. Powell,* 513 F.2d 1249, 1250 (8th Cir. 1975); *United States v. Wilkening,* 485 F.2d 234, 235 (8th Cir. 1973); *United States v. Day,* 476 F.2d 562, 564–566 (6th Cir. 1973); *United States v. Ruisi,* 460 F.2d 153, 154–157 (2d Cir. 1972). *See also United States v. Jackson,* 352 F.Supp. 672, 674 (S.D.Ohio 1972).

■ Defendant argues that his mail order sales did not violate the law because he acted in concert with licensed firearms dealers who recorded the transfers and thereby complied with the congressional intent behind § 922(a)(1). Defendant has cited no authority for this contention, and we have found none. The statute forbids an unlicensed person from dealing in firearms and makes no exception for illegal dealing which is recorded by a licensed dealer. As illustrated in the cases cited above, activity which does not comport with the precise requirements of the statute constitutes a crime.

The principal contentions raised by defendant in support of his motion for a new trial are: (A) that the court erred in admitting evidence which the defendant sought to suppress; (B) that the court erred in refusing to grant a mistrial on the basis of the closing argument of government counsel; and, (C) that the court erred in refusing to allow defendant to cross-examine Paul Acken with regard to the nature of the alleged illegal transactions. These issues have been briefed by the parties and will be addressed by the court in seriatim.

A. Defendant contends that a new trial is required because on the morning trial began the court did not allow defendant to reopen the suppression issue previously raised in motions filed before and after the defendant was indicted. The court's refusal to reopen the suppression issue at the time of trial must be viewed in light of the extended pretrial proceedings in this case.

On July 14, 1977, Thomas Buss filed a motion for return of seized property challenging the seizure in March 1977 of a shipment of firearms which had been delivered by the manufacturer to 848 Pittsburgh Street, Springdale, Pennsylvania, the address on the federal firearms license of Paul Acken and the location of an appliance store operated by Acken's parents. A hearing on the motion was conducted by United States Magistrate Ila Jeanne Sensenich. Special Agent Lawrence J. Morrissey testified that prior to the seizure Acken had telephoned the agent to report that a shipment of firearms which Acken believed to have been ordered by Buss had arrived at the store. Morrissey testified that he was told by Acken that the agent could examine the firearms. When Morrissey and Agent Masters arrived at the store the next day, they asked Acken's mother if they could open the boxes of firearms and she said they could. Subsequently, the agents seized the weapons.

The Magistrate recommended that the motion for return of the seized firearms be denied. This recommendation was adopted by the court, and, in an opinion dated February 27, 1978, the court denied a motion for reconsideration filed by Buss. There-

after, Buss was indicted and the same firearms became the subject of a motion to suppress filed April 13, 1978. A hearing was held by the court, and the motion was denied.

At the beginning of trial on June 19, 1978, defense counsel announced that he had interviewed Acken for the first time on June 17, 1978, and that he had been told that Acken had given only limited consent to the government agents to enter the appliance store to inspect the shipment of firearms in March 1977. Defense counsel submitted that the agents had violated this limited consent and that Acken would not have provided this information earlier because Acken feared retaliation by the agents. Defense counsel argued that what he learned from Acken two days prior to trial mandated the reopening of the suppression hearing.

In support of his argument, the defendant cites *Rouse v. United States*, 123 U.S. App.D.C. 348, 359 F.2d 1014, 1015–1016 (1966), where it was held that a "pre-trial ruling on a motion to suppress does not bind the trial judge in all circumstances" and that the judge has the duty to reconsider the suppression issue again if new facts appearing at trial cast reasonable doubt on the pretrial ruling. In *Rouse*, a pretrial suppression motion had been denied even though there were differences between the testimony of two police officers. At trial, one officer admitted that he had confused the facts of two separate cases and he changed his testimony so that it conformed with the testimony of the other officer. A motion to reopen the suppression hearing was denied on the sole ground that the issue had already been heard and decided. The Court of Appeals remanded the case for a fresh determination of the suppression issue stating that the officer's contradictory and confusing statements stirred previous doubts and raised new ones.

Our case presents a much different situation. Prior to the initial hearing before the magistrate, it was obvious that Acken might have information relevant to the suppression issue. At that hearing, however, the government met its burden by presenting Agent Morrissey's testimony that knowing and voluntary consent had been given for the search at the appliance store, and neither the government nor the defendant called Acken as a witness. In the motion to suppress filed April 13, 1978, defendant specifically asserted that Acken's testimony was of critical importance to the consent issue. But, at the hearing on May 9, 1978, defendant again chose not to call Acken as a witness.

Acken could have been subpoenaed by the defendant to testify at the magistrate's hearing or at the hearing on the motion to suppress. Acken was neither unknown nor unavailable to the defendant, and the proffered testimony of Acken cannot be considered newly discovered evidence. *United States v. White*, 168 U.S.App.D.C. 309, 514 F.2d 205, 207–208 (1975). *See also United States v. Beasley*, 582 F.2d 337, 339 (5th Cir. 1978); *United States v. Alper*, 449 F.2d 1223, 1234 (3rd Cir. 1971). Having made a deliberate tactical decision not to call Acken to testify at any of the pretrial hearings, defendant waived his right to challenge the admissibility of evidence on the basis of Acken's testimony. *United States v. White*, 514 F.2d at 207–208; *United States v. Harris*, 391 F.2d 384, 389 (6th Cir. 1968); *Rodriguez v. United States*, 373 F.2d 17, 18 (5th Cir. 1967).[3]

Defense counsel has argued, in the alternative, that if Acken's testimony was previously available, then the attorney's failure to call Acken as a witness deprived Buss of effective assistance of counsel. This argument is an example of the resourcefulness

---

**3.** Defense counsel asserts that Acken would not have revealed his story earlier because he feared retaliation by the government. Counsel does not assert that this alleged fear was responsible for his failure to call Acken as a witness. We note that Acken apparently told his entire story to defense counsel the very first time Acken talked to the attorney. There is no evidence that the government threatened Acken or attempted to prevent him from testifying at the hearings prior to trial. Defendant's argument that the instant case is similar to the unusual situation in *United States v. Morrison*, 535 F.2d 223 (3rd Cir. 1976), is without basis.

demonstrated by defense counsel during these proceedings. The six briefs submitted on behalf of the defendant prior to the filing of the indictment reveal that from the very beginning counsel possessed a thorough knowledge of the relevant facts and a firm understanding of the critical legal issues. At all times, defense counsel was aware of the possibility that Acken's testimony might elucidate the consent issue as well as the issue of whether defendant was in the business of dealing in firearms. The court is convinced that counsel's failure to call Acken as a witness was a deliberate tactical decision rather than the result of an oversight or incompetence. Defense counsel vigorously and capably represented his client, and counsel's performance throughout these proceedings met or exceeded the customary skill and knowledge normally shown by defense attorneys in this district. See *Moore v. United States*, 432 F.2d 730, 736–737 (3rd Cir. 1970).

Finally, it should be noted with respect to the suppression issue that at the trial the court permitted Acken to be questioned concerning the search of the appliance store. That testimony, viewed in the light of all of the other evidence, does not cause this court to doubt the propriety of the pretrial rulings on the suppression issue.

■ B. Defendant contends that the prosecutor's closing argument was prejudicial to the defendant and impinged upon the defendant's right not to present evidence. In his closing, the prosecutor told the jury that the government was unable to account for all of the guns which had been transferred to Buss (Tr. 144). In making this statement, the prosecutor was not calling upon Buss to offer an explanation of where the guns went, nor was he commenting upon Buss' failure to present records of his gun transactions as evidence at trial. Rather, the prosecutor was pointing out a problem which can arise when firearms are sold by one who is not a federally licensed dealer and who therefore is not charged with keeping records for the federal government. The prosecutor's remarks were not unduly prejudicial, and, consider-

ing the record in its entirety, the court concludes that the prosecutor's statements were by no means sufficiently prejudicial to have denied the defendant a fair trial. *United States v. Jackson*, 542 F.2d 403, 410 (7th Cir. 1976); *United States v. LeFevre*, 483 F.2d 477, 479 (3rd Cir. 1973). Moreover, we find no authority to support defendant's suggested defense that adequate records will insulate an unlicensed gun dealer from criminal liability.

■ C. The final major contention addressed in defendant's brief is that the court improperly limited questioning during the cross-examination of Acken. The court sustained the government's objection when Acken was asked:

"Now, your transactions with Mr. Buss, did you feel that you were discharging *your* duties under the law when you recorded all those items on Form 4473?"

(Tr. 59, emphasis supplied). The question was properly disallowed because Acken's response would have reflected only whether Acken believed he was fulfilling his own obligations as a federally licensed firearms dealer. The question had no relevance to whether Buss was dealing in firearms illegally. The question asked of Acken was different from the questions about gun laws and regulations in general which were asked of Agent Morrissey by both sides after defense counsel had questioned the agent about his knowledge of those laws (Tr. 107, 111–114). Likewise the questions to Agent Masters by defense counsel and then the government were general inquiries which did not ask the agent to state whether he believed Buss had violated the law (Tr. 77–79).

■ D. In his motion, defendant has raised additional assertions of error which he did not address in his brief or in his oral argument. In particular, defendant claims that the court erred in failing to affirm several of defendant's proposed points for charge, and that the court erred in denying an additional proposed point for charge which was presented orally after the completion of closing arguments. Defendant's contentions here are at odds with the re-

quirements of Rule 30, Fed.R.Crim.P., which provides that requested instructions are to be presented in writing at the close of evidence, and that a party may not assign as error any omission from the charge unless the party states his objection to the charge prior to the time the jury retires. There were no objections to the charge prior to the time the jury retired.

After considering these and each of the additional assertions of the defendant, the court concludes that the defendant's contentions are without merit and that the asserted errors, viewed individually or collectively, do not warrant a new trial.

An appropriate order will be entered denying defendant's motion.