**UNITED STATES of America, Appellee,**

v.

**Dimitrise UCA, Appellant/No. 88–1607.**

**UNITED STATES of America, Appellee,**

v.

**Brahim HODZIC,**
**Appellant/No. 88–1614.**

**Nos. 88–1607, 88–1614.**

United States Court of Appeals,
Third Circuit.

Argued Dec. 16, 1988.
Decided Feb. 9, 1989.

---

Gregory E. Smith (argued), Brown, Vance, Jackson & Smith, Philadelphia, Pa., for appellant, Dimitrise Uca.

Charlotte E. Thomas, (argued), Klehr, Harrison, Harvey, Branzburg, Ellers & Weir, Philadelphia, Pa., for appellant, Brahim Hodzic.

Michael M. Baylson, U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Chief of Appeals, Joseph T. Labrum, III (argued), Asst. U.S. Atty., Philadelphia, Pa., for appellee, U.S.

Before GIBBONS, Chief Judge, HUTCHINSON, Circuit Judge and BROTMAN, District Judge.*

OPINION OF THE COURT

GIBBONS, Chief Judge:

Brahim Hodzic and Dimitrise Uca appeal from judgments of sentence imposed following the entry of their guilty pleas to charges of violating 18 U.S.C. §§ 371, 922 (1982 & Supp. IV, 1986) (conspiracy to commit federal firearms offenses). Since the offenses were committed after November 1, 1987, their sentence is governed by the Sentencing Reform Act of 1984, 18 U.S. C.A. §§ 3551–3585 (West 1985 & Supp. 1988). In both cases the district court departed upwardly from the guideline sentence. Hodzic and Uca each contend that the upward departure was not permissible because the circumstances relied on by the district court had been taken into account by the Sentencing Commission, that the court's statement of reasons for the upward departure is inadequate, and that the sentence imposed is unreasonable. We conclude that in each case no upward departure was permissible. Thus, we will reverse and remand for resentencing within the Sentencing Guidelines.

I

Hodzic and Uca attempted to purchase fifty-six guns in Pennsylvania for delivery in New York, and ultimate shipment overseas. Unfortunately for them, they were dealing with a government sting operation. As a result they were each indicted on one count of conspiracy to commit federal firearms offenses in violation of 18 U.S.C. §§ 371, 922.[1] Each entered into a plea agreement in exchange for a government promise to recommend that the court reduce their sentences pursuant to Chapter 3, Part E, § 3E1.1 of the Sentencing Guidelines for acceptance of responsibility. Sentencing Guidelines, Chap. 3, Part E—Acceptance of Responsibility, § 3E1.1, at 3.21 (1988).

At the sentence hearing the government made such a recommendation, and asked the court to impose sentences in accordance with the guidelines. The Probation Department in its presentence reports, however, recommended sentences in excess of the guidelines because the object of the conspiracy posed threats to community safety and welfare. The Probation Department recommended for Hodzic twenty-four months in prison, three years of supervised release, and $5,050 in fines and special assessments. It recommended for Uca eighteen months in prison, three years of supervised release and $1,050 in fines and special assessments. In Uca's case the court adopted the recommendation of the Probation Department. In Hodzic's case the court exceeded them. Hodzic received a sentence of thirty months imprisonment, three years of supervised release, and $2,250 in fines and assessments.

The Guidelines sentences, as calculated by the Probation Department, prescribe a range of incarceration for Hodzic of between six and twelve months, and for Uca of between two and eight months. Supervised release depends on the length of the sentence imposed. Sentencing Guidelines, Chap. 5, Part D—Supervised Release, at 5.15–.16 (1988). The amount of a fine depends on the length of imprisonment, probation, or supervised release. *Id.* at Part E Restitution, Fines, Assessments, Forfeiture, § 5E4.2, at 5.18 (1988). Thus the

---

* Hon. Stanley S. Brotman, United States District Judge for the District of New Jersey, sitting by designation.

1. The indictment listed violations of 18 U.S.C. § 922(a)(1)(A), and 922(a)(3), which read:
 (a) It shall be unlawful—
 (1) for any person—
 (A) except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms, or in the course of such

business to ship, transport, or receive any firearm in interstate or foreign commerce....
 . . . .
 (3) for any person, other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector to transport into or receive in the State where he resides (or if the person is a corporation or other business entity, the State where it maintains a place of business) any firearm purchased or otherwise obtained by such person outside that State....
 18 U.S.C. § 922(a) (1982 & Supp. IV 1986).

court's upward departure affected each element of both sentences.

In Hodzic's case the court gave the following explanation for the upward departure:

> Okay. The statutory maximum sentence on count 1 is five years' imprisonment. The guideline range is 6 to 12 months. I am departing from the guideline range and imposing a sentence of 30 months. Mr. Hodzic's offense and Mr. Hodzic possessing 56 untraceable handguns poses a serious threat to the public safety and welfare of the community. There's no lawful purpose for these guns. We're not talking about one gun or two guns, we're talking about 56 untraceable handguns which translates in my mind to at least 56 potential acts of violence in this country or in another country. The use of handguns, unlicensed handguns, causes the perpetuation of criminal activity of persons so inclined to rob, maim, start their own private wars, even drug wars in cities such as Philadelphia.
>
> I also find it difficult to understand why the defendants would not have had some purpose in mind for these 56 weapons that could be articulated here today.

Hodzic A. 39–40.

In Uca's case the explanation for the upward departure was as follows:

> I'm departing from the guidelines upward because of the threat posed to the community by the defendant. As best I can surmise, and taking the evidence in the light most favorable to the defendant, he was involved in the attempted sale of 56 handguns to an Albanian for overseas use, an illegal use which would have required transport outside of the country.
>
> On the other hand, according to the defendant there was no clear purpose, which translates into an undefined purpose which means that these untraceable guns had a market value in this country or elsewhere precisely because they were untraceable.

Uca A. 47.

In response to a question by Uca's counsel, the court elaborated:

> I do not find that the guidelines are adequate to address an issue of intended sale of handguns for an overseas war, small or large. I do not find the guidelines speak to the characteristic of the guns being untraceable. I do not find the guidelines speak to the characteristic of the offense, including handguns—well, that are not traceable.
>
> It is the quality of that offense which prompts me to depart from the guidelines. The guidelines are guidelines, I exercise my discretion in departing from them and for the reasons given.

Uca A. 48–49.

## II

### A. *SCOPE OF REVIEW*

 The governing provision of the Sentencing Reform Act states:

> The court shall impose a sentence of the kind and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.

18 U.S.C.A. § 3553(b) (West 1985 & Supp. 1988). This provision is mandatory. No departure is permitted on the basis of circumstances adequately taken into consideration by the Sentencing Commission. In determining whether section 3553(b) permits a departure because the Commission did not adequately take designated circumstances into account, our review is plenary. *United States v. Ryan,* 866 F.2d 604 (3d Cir.1989).

The appropriate method of interpretation of the Guidelines for the exercise of our review is suggested by the Sentencing Commission, which devotes an entire section to departure. *See* Sentencing Guidelines, Chap. 5, Part K—Departures, at 5.35–.40 (1987). Policy Statement § 5K2.0 lists areas the Commission felt "cannot, by their very nature, be comprehensively listed and analyzed in advance." After reit-

erating the standard for departure set in 18 U.S.C. § 3553(b) and stating that "[t]he controlling decision as to whether and to what extent departure is warranted can only be made by the court at the time of sentencing," *id.* at § 5K2.0, the Guidelines limit court discretion: "Where the applicable guidelines, specific offense characteristics, and adjustments do take into consideration a factor listed in this part, departure from the guideline is warranted only if the factor is present to a degree substantially in excess of that which ordinarily is involved in the offense of conviction." *Id.* Thus, the Guidelines, commentaries and policy statements clearly indicate that departures should be rare.

The interpretive posture suggested by the Sentencing Commission is consistent with the materials comprising the legislative history of the Sentencing Reform Act. Those materials repeatedly state that departures are to be the exception, not the rule. *See, e.g.*, S.Rep. No. 225, 98th Cong., 2d Sess. 1, 52, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3235 (envisioning that most cases will be disposed of using the Guidelines).

The Guidelines also embody changes in the philosophy of sentencing—changes that impact departure. In authorizing creation of the Guidelines, Congress rejected as outmoded the rehabilitation model on which old sentencing laws were based. S.Rep. No. 225, 98th Cong., 2d Sess. 38, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3221. It eliminated parole, rendering the sentence imposed by the judge the sentence actually served. *See* 18 U.S.C. § 3551 (1982 & Supp. IV 1986) (repealing 18 U.S.C. §§ 5005–17). These attempts to impose uniformity will be destroyed if courts depart often from the Guidelines.

In drafting the Guidelines, the Commission moved away from a real offense sentencing system and toward a charged offense system. It associates real offense charging with the disparities imposed under the old system. Sentencing Guidelines, Chap. One, Part A—Introduction, § 4(a), at 1.6 (1987). Thus, the sentences are based on the conduct for which the defendant was charged and convicted, rather than on the aggregate of his identifiable conduct.[2] *Id.* at § 4(a), at 1.5. Throughout the Guidelines the theme is uniformity and ease of application.[3] Some elements of real offense sentencing remain. For example, the concepts of specific offense characteristics and adjustments arise from the real offense approach. *Id.* at 1.6. Any system based on the charge for which the defendant was convicted, however, must rely heavily on judicial compliance with the spirit of the new system. Thus in exercising our review function on the question whether the Commission adequately took certain factors into consideration this court should respect the overriding congressional purpose of reducing sentence disparity and achieving general uniformity of treatment.

## B. *UPWARD DEPARTURE IS NOT WARRANTED*

The circumstances relied on by the district court for upward departure from the Guidelines are the number of guns involved; the untraceability of the guns had they been furnished; and the potential for their use in unlawful activity.

### (1) *Sentencing Guidelines 2K2.3 adequately considers the number of guns involved*

■ The Specific Offense Characteristics subsection of Guideline § 2K2.3 requires

---

**2.** Section 1B1.2, Applicable Guidelines, provides somewhat of an exception to this rule. Sentencing Guidelines, Chap. One, Part B, § 1B1.2, at 1.14 (1988). Generally, the sentencing court must apply the guideline referenced to a particular statute. *Id.* at § 1B1.1, at 1.13. When, however, the defendant enters a guilty plea accompanied by a stipulation that "specifically establishes a more serious offense than the offense of conviction, the court shall apply the guideline in such chapter most applicable to the stipulated offense." *Id.* at § 1B1.2, at 1.15.

**3.** Originally, the Commission attempted to develop a real offense system. Sentencing Guidelines, Chap. One, Part A, § 4(a), at 1.5 (1987). Such a system proved too cumbersome, both to develop and to operate. *Id.* Next, the Commission experimented with a modified real offense system. *Id.* This system proved too complex, and because it relied on mechanical rules, the Commission feared it would result in unfair treatment. *Id.*

the sentencer to increase offense levels proportionately to the number of guns involved in the violation:

| Number of Firearms | Increase in Level |
|---|---|---|
| (A) | 6–10 | add 1 |
| (B) | 11–20 | add 2 |
| (C) | 21–50 | add 3 |
| (D) | 51–100 | add 4 |
| (E) | 101–200 | add 5 |
| (F) | more than 200 | add 6 |

Sentencing Guidelines § 2K2.3(b)(1), at 2.99 (1987). This section clearly covers the number of guns. The trial court does not suggest any reason, other than disagreement with the Commission, why the Commission's consideration of the circumstance of the number of guns involved was inadequate. None occurs to us. Thus, the number of guns involved is not a circumstance warranting upward departure.

(2) *Sentencing Guideline § 2K2.3 adequately contemplates untraceability*

■ As with the number of guns involved above, the Guideline expressly addresses guns that may not be traceable: "If the defendant knew or had reason to believe that a firearm was stolen or had an altered or obliterated serial number, increase by 1 level." Sentencing Guidelines § 2K2.3(b)(2)(C), at 2.99 (1987). No reason appears for substituting our judgment for that of the Commission with respect to the appropriate guideline treatment for that circumstance.

(3) *Guideline § 2K2.3, Prohibited Transactions in or Shipment of Firearms and Other Weapons, adequately contemplates unlawful purpose for the guns*

■ Although the government did not seek an upward departure in the district court, it contends here that an accurate reading of section 922 of title 18 and of section 2K2.3 of the Guidelines plus commentary and policy statements reveals that the Commission failed to consider adequately the circumstances presented in the instant cases. The government's argument is that section 922 primarily serves a regulatory function and that the Sentencing Guidelines reflect that orientation. In other words, section 922 is not severe enough to punish Hodzic and Uca as they deserve, although conspiracy to violate it is all they were charged with. *See* Brief for Appellee in *Hodzic* at 8–9; Brief for Appellee in *Uca* at 9–10.[4] An examination of the statute refutes this contention. As the government asserts, section 922 does regulate firearms importers, dealers, manufacturers, and licensees. Brief for Appellee in *Hodzic* at 8; Brief for Appellee in *Uca* at 9; *see* 18 U.S.C.A. § 922 (West 1976 & Supp.1988). Every transaction, however, has two sides, and section 922 punishes both of them. *See id.* at § 922(a). While this statute does snare dealers, importers, and manufacturers, licensed or not, as well as gun collectors, hunters, and the interstate Bernie Goetzes, it covers equally the Hodzics and Ucas.

Several points must be kept in mind here. First, how else is any government to control guns in society if not through regulation and punishment of violations? The only alternative is to punish after the guns have caused damage. Second, the federal government possesses limited options for exercise of any gun control—here it uses the authority to regulate interstate and foreign commerce. Third, the legislative history of the Gun Control Act of 1968, amending the Omnibus Crime Control and

---

**4.** The government's Uca brief cites a number of cases meant to illustrate the typical section 922 defendant. *See* Brief for Appellee in *Uca* at 9 (citing *United States v. One Heckler–Koch Rifle,* 629 F.2d 1250 (7th Cir.1980) (gun on airplane)); *United States v. Newman,* 628 F.2d 362 (5th Cir.1980) (sales by gun store employees to known nonresidents); *United States v. Scannapieco,* 611 F.2d 619 (5th Cir.1980) (sale to a known nonresident); *United States v. Van Bu-ren,* 593 F.2d 125 (9th Cir.1979) (gun collector selling guns); *United States v. Smith,* 584 F.2d 731 (5th Cir.1978) (unreported sale of guns); *United States v. Buss,* 461 F.Supp. 1016 (W.D.Pa. 1978), *aff'd,* 601 F.2d 576 (3d Cir.1979) (dealing in firearms without a license). Clearly these cases stand factually distinct from the cases of Hodzic and Uca. However, section 922 reaches other offenders as well.

Safe Streets Act of 1968 memorializes congressional concern regarding the relationship between guns and crime:

> The principal purpose of H.R. 17735, as amended, is to strengthen Federal Controls over interstate and foreign commerce in firearms and to assist the States effectively to regulate firearms traffic within their borders.
>
> . . . .
>
> The increasing rate of crime and lawlessness and the growing use of firearms in violent crime clearly attest to a need to strengthen Federal Regulation of interstate firearms traffic.

H.R.Rep. No. 1577, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.Code Cong. & Admin.News 4410, 4411, 4412.

The applicable Guidelines apply to most of the conduct prohibited by violations of 26 U.S.C. § 5861, a statute regulating, among other transactions, transfer of unregistered or unnumbered firearms. *See* 26 U.S.C. § 5861 (1982). Guideline § 2K2.3(a) sets a base offense level of 12 for section 5861 violations and a base offense level of 6 for all covered section 922 violations. The Specific Offense Characteristics listed in (b) appear either neutral or regulatory. For example, section 2K2.-3(b)(2) instructs the sentencing court to increase the offense level

> (A) If the defendant knew or had reason to believe that a purchaser was a person prohibited by federal law from owning the firearm. . . .
> (B) If the defendant knew or had reason to believe that a purchaser resided in another state in which he was prohibited from owning the firearm. . . .
> (C) If the defendant knew or had reason to believe that a firearm was stolen or had an altered or obliterated serial number. . . .

*Id.* Each of these looks regulatory. Subsections (A) and (B) both resemble provisions in section 922. *See* 18 U.S.C.A. § 922(a)(5), (b)(2), (b)(3), (d), (g) (West 1976 & Supp.1988). In fact, these two sections provide for a heightened offense level where offenses within the section compound one another. *Compare* Sentencing

Guidelines § 2K2.3(b)(2), at 2.99 *with* 18 U.S.C.A. § 922(a)(5), (b)(2), (b)(3), (d), (g) (West 1976 & Supp.1988). Subsection (C) seems to be a hybrid consideration. Section 922 makes no reference to stolen firearms or firearms with altered or obliterated serial numbers. *See generally* 18 U.S.C.A. § 922. Section 5861 prohibits possession, transfer, and receipt of firearms that have been stolen, or whose serial numbers have been obliterated or altered. *See* 26 U.S.C. § 5861 (1982). It appears, therefore, that subsection (C) applies to either code section violation. Last, subsection (b)(1), increasing the offense level incrementally by the number of guns involved, is neutral. *See* Sentencing Guidelines at § 2K2.3(b)(1). Clearly, Guideline § 2K2.3 does have regulatory characteristics.

These regulatory-appearing elements, however, do not support the government's contention that the Guidelines do not give adequate consideration to Hodzic and Uca's unlawful intent. As noted above, section 922 itself contemplates illegal activity. In addition, the commentary for this Guideline section states that "[t]his section applies to a variety of offenses involving prohibited transactions in or transportation of firearms and certain other weapons." Sentencing Guidelines at § 2K2.3. Since this section also applies to 26 U.S.C. § 5861, which clearly contemplates unlawful intent, as a whole it must contemplate such intent. Furthermore, since the factors in subsection (b)(2) represent combinations of criminal acts leading to increased offense levels, the Guidelines clearly contemplate that shades of unlawful activity exist. Clearly, the Guidelines contemplate unlawful intent.

The government refers us to the Commission commentary at 2.97 to the effect that "[a]part from the nature of the defendant's criminal history, his actual or intended use of the firearm is probably the most important factor in determining the sentence." The government, however, takes the statement out of context. It refers to presentencing guidelines practices. In its entirety, it reads:

Under current sentencing practices, there is substantial sentencing variation for these crimes. From the Commission's investigations, it appears that the variation is attributable primarily to the wide variety of circumstances under which these offenses occur. Apart from the nature of the defendant's criminal history, his actual or intended use of the firearm is probably the most important factor in determining the sentence.

Sentencing Guidelines, § 2K2.1, Commentary, at 2.97 (1987). This description of presentencing guidelines practice, which produced great disparity in sentencing, lends no support for a departure which would restore that practice.

Thus, the intended use of the guns is not a circumstance warranting upward departure.[5]

(4) *The public welfare provision in section 5K2.14 does not justify upward departure*

 The government also attempts to justify upward departure by reference to Sentencing Guidelines, Chap. 5, Part K, § 5K2.14, at 5.40 (1987). Under section 5K2.14 the Guidelines allow for departures "[i]f national security, public health, or safety was significantly endangered." The policy statement informs sentencing judges that these departures are "highly unusual." *Id.* at Chap. One, Part A, § 4(b), at 1.8 (1987). In addition, the Guidelines generally limit Chapter 5, Part K departures: "Where the applicable guidelines, specific offense characteristics, and adjustments do take into consideration factors listed in this part, departure from the guideline is warranted only if the factor is present to a degree substantially in excess of that

which ordinarily is involved in the offense of conviction." *Id.* at Chap. 5, Part K, § 5K2.0, at 5.36–.37 (1987).

Public safety represents a prime consideration whenever restrictions are placed on guns. If any doubt about this existed, the fact that the Guidelines governing firearms violations are included in a part entitled "Offenses Involving Public Safety" removes that doubt. Since the applicable Guideline does take public welfare into consideration, this court must ask whether danger to the public arising from the facts of this case was "present to a degree substantially in excess of that which ordinarily is involved in the offense of conviction." It cannot be said that the present facts satisfy the standard set in section 5K2.0. Because the Guidelines clearly contemplate the very activities charged in these cases, the departure was not lawful.

## III

We have determined that the circumstances relied on by the district court for upward departure were adequately taken into consideration by the Sentencing Commission. That determination requires that the sentences appealed from be vacated and the cases remanded to the district court for resentencing within the range established by Guideline § 2K2.3. Because of that determination, it is unnecessary to consider Hodzic's and Uca's additional contentions that the district court's statements of reasons for upward departure were inadequate, and that the sentences imposed are unreasonable.

---

5. Even if intent were not adequately considered by the Guideline applicable to section 922, the court would be required to take into account section 1B1.2, entitled *"Applicable Guidelines,"* which provides in relevant part:

(a) The court shall apply the offense guideline section in Chapter Two (Offense Conduct) most applicable to the offense of conviction. *Provided,* however, in the case of conviction by a plea of guilty or *nolo contendere* containing a stipulation that specifically establishes a more serious offense than the offense of con-

viction, the court shall apply the guideline in such chapter most applicable to the stipulated offense.

Sentencing Guidelines, Chap. One, Part B—Gen. Application Principles, § 1B1.2, at 1.15 (1988) (emphasis in original). Thus, if the district court found § 2K2.3 inappropriate to the crimes stipulated to, it would have had to search for a better section—perhaps in this instance merely applying the same section but using the base offense level provided for 26 U.S.C. § 5861 violations.