**UNITED STATES of America**

v.

**Dennis L. ASTORRI, Appellant.**

**No. 90–3277.**

United States Court of Appeals, Third Circuit.

Argued Aug. 30, 1990.

Decided Jan. 22, 1991.

Raymond M. Radulski (argued), Wilmington, Del., for appellant.

Richard G. Andrews (argued), Office of U.S. Atty., Wilmington, Del., for appellee.

Before HUTCHINSON, NYGAARD and ROSENN, Circuit Judges.

## OPINION OF THE COURT

NYGAARD, Circuit Judge.

Appellant Dennis Astorri pleaded guilty to one count of wire fraud and one count of income tax evasion. The district court imposed two concurrent 54–month terms of imprisonment and ordered Astorri to make restitution in the amount of $361,317.77. On appeal, Astorri claims that the district court misapplied the United States Sentencing Guidelines. Although we agree with much of the district court's disposition, we will remand for resentencing as to one as-

pect of the sentence discussed below in part V.

## I.

Dennis Astorri was a stockbroker who lived extravagantly. He rented an expensive apartment, leased a Porsche automobile, totally supported his girlfriend, and used cocaine frequently. His living habits were not supported by honest enterprise but by a fraudulent stockbrokerage scheme. Astorri promised tremendous returns to gullible investors and pocketed their investment money. He defrauded twelve individuals, including his girlfriend's parents, John and Elvira Kronyak. The Kronyaks lost their life savings of $119,-311. They invested by taking a second mortgage on their home. To pay off the second mortgage, Mr. Kronyak, an electrician, will be forced to forego his planned early retirement and work as long as possible. Astorri's other victims fared no better.

Mark McCurnin lost $48,000 he received in settlement for an injury he sustained. Melvin and Linda Brown lost $1,800, saved for their children's education. George and Grace Taylor, retirees in poor health, lost $160,000. They raised their investment by selling inherited stock, cashing a $35,000 certificate of deposit, and withdrawing $10,000 from an individual retirement account. The Taylors mortgaged their house just to pay income taxes on the stock they sold.

Lynn and David Ross lost $7,200 which represented a large part of their life savings. Joseph and Audrey Needles, both nearly sixty, lost $15,000, raised by selling stock. Vincent Moscarelli, a self-employed horse trainer who earns only $18,000 a year, lost his life savings of $9,500.

Astorri executed his scheme by getting customers to invest in the stock or bond market through his stockbrokerage, First Securities of America. Initially, Astorri would legitimately invest his victims' funds. After a short period, he would inform them of a great investment opportunity with an attractive rate of return. Astorri would then deposit his investors' money into his personal bank accounts. Some of this money was invested, but most Astorri spent. To avoid making payments to his investors, and to cover up his scheme, he persuaded the victims to reinvest their "profits."

Astorri was charged with a number of crimes, but in return for his pleas of guilty to one count of wire fraud, 18 U.S.C. § 1343, and one count of income tax evasion, 26 U.S.C. § 7201, the government dropped charges of mail fraud, 18 U.S.C. § 1341; failure to file income tax returns, 26 U.S.C. § 7203; perjury, 18 U.S.C. § 1623; and fraud, 18 U.S.C. § 2314. When sentencing Astorri, the district court made the following upward adjustments to Astorri's base offense level of six: (1) seven levels for the amounts of money involved in the fraud; (2) two levels because more than one person was defrauded; (3) two levels for vulnerable victims; (4) two levels for using a stockbroker's special skill to perpetrate his scheme; (5) two levels for Astorri's income tax evasion conviction; (6) two levels for more than minimal planning; and (7) two levels for the extreme psychological injury inflicted upon Astorri's victims. The district court credited Astorri with a downward adjustment of two levels for accepting responsibility. The total offense level calculated by the district court was twenty-three, which creates a guideline sentencing range of between 46 and 57 months.

## II.

■ The first issue before us is whether Fed.R.Crim.P. 32 entitled Astorri to advance notice that the district court might make upward sentencing adjustments. Astorri argues he must be given an opportunity to prepare for the sentencing hearing. We conclude that Rule 32 does not entitle Astorri to advance notice.

Rule 32(a)(1) provides, in pertinent part: "At the sentencing hearing, the court shall afford counsel ... an opportunity to comment upon the probation officer's determination and on other matters relating to the appropriate sentence." Fed.R.Crim.P.

32(a)(1). According to the Rule, the purpose of a sentencing hearing is to provide the government and the defendant with an opportunity to present evidence to help the court to decide, among other things, whether and how it will adjust offense levels. The district court met the procedural requirements of Rule 32 by affording Astorri an opportunity to voice his objections *after* it found section 3A1.1 applicable, but before making an upward adjustment. The court gave Astorri an opportunity to be heard. That is all Rule 32 requires. *See United States v. Cervantes,* 878 F.2d 50, 56 (2d Cir.1989); *cf. United States v. Burns,* 893 F.2d 1343, 1348 (D.C.Cir.), *cert. granted,* — U.S. —, 110 S.Ct. 3270, 111 L.Ed.2d 780 (1990) ("Since the defendant had an opportunity to address the court before sentencing during his allocution and has a right to appeal his sentence, he has not been harmed by the trial court's lack of notice.").

### III.

■ Next, we must decide if the district court erred by making a two-level upward adjustment on the grounds that Astorri's victims were vulnerable. U.S.S.G. § 3A1.1 provides:

If the defendant knew or should have known that the victim of the offense was unusually vulnerable due to age, physical or mental condition, or that the victim was particularly susceptible to the criminal conduct, increase by 2 levels.

U.S.S.G. § 3A1.1.

The relevant Application Note provides:

This adjustment applies to offenses where an unusually vulnerable victim is made a target of criminal activity by the defendant. The adjustment would apply, for example, in a fraud case where the defendant marketed an ineffective cancer cure or in a robbery where the defendant selected a handicapped victim. But it would not apply in the case where the defendant sold fraudulent securities by mail to the general public and one of the victims happened to be senile.

U.S.S.G. § 3A1.1, Application Note 1.

■ Questions of whether a victim is "particularly susceptible to ... criminal conduct" inherently involve factual determinations. Such determinations are made by the sentencing judge who has the best opportunity to see the defendant and the victims. *United States v. Mejia–Orosco,* 868 F.2d 807, 809 (5th Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989). We review the district court's factual findings in this context for clear error. 18 U.S.C. § 3742(e).

We find the district court did not err when applying section 3A1.1. The district court made findings that Astorri's victims were vulnerable on two grounds: the investors' ages and lack of sophistication; and Astorri's victimization of his girlfriend's parents. Since we decide the district court correctly applied section 3A1.1 based upon the way Astorri exploited his girlfriend's parents, the Kronyaks, we need not decide whether the district court's enhancement for the victims' ages was correct. The district court found that the relationship between Astorri, his girlfriend and the Kronyaks, rendered the Kronyaks unusually susceptible to Astorri's persistent requests for more investment funds. Astorri even went so far as to promise to marry the Kronyaks' daughter in order to get additional money from them. It was not erroneous to find that because of the close relationship between Astorri and his girlfriend, her parents were vulnerable and "particularly susceptible" to his fraudulent investment scheme. That finding provides a sufficient basis to enhance Astorri's offense level under section 3A1.1.

### IV.

■ The next issue is whether the district court erred by enhancing Astorri's base offense level for his tax evasion conviction. The court gave alternate grounds for its two level enhancement. First, the court concluded that if Astorri's wire fraud and tax evasion convictions are grouped together under section 3D1.2, then the specific offense characteristic of the tax evasion offense would increase the offense level by two because Astorri evaded taxes due on money generated by a criminal ac-

tivity. In the alternative, the district court reasoned that if the two offenses were not grouped together because they involved different victims, the court could nonetheless enhance the fraud conviction base offense level under section 3D1.4(a).

Exercising plenary review of the district court's construction and application of the guidelines, 18 U.S.C. § 3742(e), we will affirm the district court's alternative enhancement under section 3D1.4(a). Our analysis nonetheless begins with section 3D1.2:

> All counts involving substantially the same harm shall be grouped together into a single group.... Counts involve *substantially the same harm* within the meaning of this rule:
>
> (a) When counts involve the *same victim* and *the same act or transaction.*
>
> \* \* \* \* \* \*
>
> (c) When one of the counts embodies *conduct* that is treated as a *specific offense characteristic* in, or other adjustment to, the guideline applicable to another of the counts.

U.S.S.G. § 3D1.2 (emphasis supplied).

Under subsection 3D1.2(a), the tax evasion and fraud counts did not involve the same victims. While the various private investors suffered the harm of Astorri's fraudulent stockbrokerage scheme, Astorri's tax evasion targeted the government. Thus, grouping under section 3D1.2(a) is inappropriate.

As for subsection 3D1.2(c), Astorri argues the fraud count embodies conduct treated as a specific offense characteristic under the tax evasion offense and, therefore, section 3D1.2(c) requires grouping the two counts. Applying the rules of section 3D1.3, Astorri concludes that "the highest

offense level is 17 relating to the fraud count." Appellant's Brief at 20. Astorri points out that the combined offense level guideline, U.S.S.G. § 3D1.4, is not applicable since it refers to *multiple* groups and his convictions constitute only *one* group. Therefore, he concludes that the district court may not apply a two level increase under that section.[1]

Section 3D1.2(c) targets "conduct" embodied in one count that is treated as a "specific offense characteristic" in another count. The "specific offense characteristic" at issue here refers to the tax evasion count, section 2T1.1(b)(1). That section provides for a two level increase where:

> (A) the defendant failed to report income exceeding $10,000 per year from criminal activity, or
>
> (B) the offense concealed or furthered criminal activity from which the defendant derived a substantial portion of his income.

U.S.S.G. § 2T1.1(b)(1).

Neither of these specific offense characteristics constitutes conduct embodied in the fraud count. The government did not have to prove that Astorri engaged in tax evasion to convict him of fraud. Further, the fraud sentencing guideline does not address concealment of criminal activity or a failure to report criminally-derived income. *See* U.S.S.G. § 2F1.1.

Our distinction between the fraud and tax evasion counts is supported by the background commentary to the tax evasion offense:

> Failure to report criminally-derived income is included as a factor for deterrence purposes. Criminally-derived income is generally difficult to establish,

---

**1.** Astorri's analysis depends upon a supplemental illustration given by the sentencing commission.

> *Example C.6.* The defendant is convicted of one count of theft and one count of income tax evasion for evading taxes on the income obtained from the theft.
>
> Proper grouping depends on the specific facts. The tax evasion guideline contains a specific offense characteristic § 2T1.1(b)(1), that increases the offense level if the defendant

failed to report income exceeding $10,000 per year from criminal activity, or if the offense concealed or furthered criminal activity from which the defendant derived a substantial portion of his income. If either of these characteristics applies, the counts are grouped together under § 3D1.2(c); otherwise, they are not.

The Commission's supplemental illustration does not bind us nor do we find it necessary for our analysis.

so that the tax loss in such cases will tend to be substantially understated.

*Background Commentary*, U.S.S.G. § 2T1.1.

Thus, the Commission included this specific offense characteristic to deter tax evasion. To include this specific offense characteristic as "conduct" in the fraud count negates its separate inclusion within the tax evasion guideline. We conclude that the two counts were quite properly not grouped together under section 3D1.2(c).

 Since the fraud and tax evasion counts may not be grouped together, we treat them as two separate groups when applying section 3D1.4. Section 3D1.4(a) instructs us to "[c]ount as one Unit the Group with the highest offense level [and] [c]ount one additional Unit for each Group that is equally serious or from *1* to *4* levels less serious." (emphasis in original). In this case, the fraud count, at level 19, represented the group with the highest offense level. The court computed the tax evasion at an offense level of 15. Therefore, under section 3D1.4(a), the court correctly added two units or levels to the fraud offense calculation.

### V.

 The next issue is whether the district court erred by increasing Astorri's fraud conviction four levels under section 2F1.1(b)(2). Since we are reviewing the district court's application and construction of the guidelines, our standard of review is plenary. 18 U.S.C. § 3742(e). We conclude that the increase should have been limited to two levels.

At the time of sentencing,[2] section 2F1.-1(b)(2) read:

(2) If the offense involved (A) more than minimal planning, or (B) a scheme to defraud more than one victim, increase 2 levels. (Effective November 1, 1989.)

Imposing a four level increase when more than minimal planning *and* more than one victim are *both* present in a crime would undermine the intent of *section*

*2F1.1(b)(2)*. The commentary to that section says:

Empirical analyses of current practices show that the most important factors that determine sentence length are the amount of loss and whether the offense is an isolated crime or is *sophisticated* or *repeated.*

\* \* \* \* \* \*

The extent to which an offense is planned or sophisticated is important in assessing its potential harmfulness and the dangerousness of the offender, independent of the actual harm. A *complex scheme* or *repeated incidents of fraud* are indicative of an intention and potential to do considerable harm. In current practice, this factor has a significant impact, especially in frauds involving small losses. Accordingly, the guideline specifies a 2–*level* enhancement when this factor is present.

*Background Commentary*, U.S.S.G., § 2F1.1 (emphasis supplied). The enhancement factor represented by section 2F1.1 advises the sentencing court to look for complexity (more than minimal planning) or repetition (more than one victim) as signs of potential harm. If either characteristic is present, the commentary tells us to apply a two level increase. The commentary does not indicate a four level enhancement where both signs of harm are present. A two rather than a four level increase is proper under section 2F1.1 because where, as here, a defendant defrauds more than one victim, the scheme will often involve more than minimal planning, and vice-versa.

Our holding finds support from other courts of appeals. *United States v. Irabor*, 894 F.2d 554, 556 (2d Cir.1990) (offense level increased by two points for "more than minimal planning and more than one victim"); *United States v. Bolden*, 889 F.2d 1336, 1339 (4th Cir.1989) (offenses involving "more than minimal planning," and a "scheme to defraud more than one victim" raised level only two points.) *See also*

---

**2.** We apply the guidelines in effect at the time of sentencing. *United States v. Cianscewski*, 894

F.2d 74, 77 n. 6 (3d Cir.1990). Astorri was sentenced on April 23, 1990.

*United States v. Campbell*, 878 F.2d 164, 165 (5th Cir.1989) (The district court added two points because the offense involved more than minimal planning and was aimed at more than one victim. The Court of Appeals vacated and remanded for "extreme departure" from the recommended guideline sentence without expressly approving or rejecting the court's conclusion under section 2F1.1(b)(2).) *But see United States v. Reyes*, 908 F.2d 281, 289–90 (8th Cir.1990) (Offense level raised by four points for more than one victim and more than minimal planning.) Hence, we will remand to the district court for resentencing.

### VI.

■ Under section 5K2.3 of the Guidelines, the district court applied a two-level increase on the grounds that Astorri inflicted extreme psychological injury on his victims. Section 5K2.3 provides:

If a victim or victims suffered psychological injury much more serious than that normally resulting from commission of the offense, the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily should depend on the severity of the psychological injury and the extent to which the injury was intended or knowingly risked.

Normally, psychological injury would be sufficiently severe to warrant application of this adjustment only when there is a substantial impairment of the intellectual, psychological, emotional, or behavioral functioning of a victim, when the impairment is likely to be of an extended or continuous duration, and when the impairment manifests itself by physical or psychological symptoms or by changes in behavior patterns. The court should consider the extent to which such harm was likely, given the nature of the defendant's conduct.

Astorri contends that the district court erred because there was "no evidence in the record that *any* of the victims suffered any psychological injuries as a result of the offense." Appellant's Brief at 26.

■ Since the district court followed a departure approved by the Sentencing Commission and Astorri challenges only the district court's factual findings, we review only for clear error. 18 ·U.S.C. § 3742(e). *United States v. Ryan*, 866 F.2d 604, 610 (3d Cir.1989) ("We conclude, in light of the general language of the guidelines indicating that if departure is authorized, the district courts are entitled to exercise a substantial amount of discretion in determining whether to depart from the guidelines …").

The district court applied its extreme psychological injury increase by stating:

The factors in this case, which I think are significant, are the elderly victims who were the subject of this scheme to defraud, those who had life savings stolen including the Kronyaks, the Taylors, the Rosses and the Needles and those whose family home was forced to be sold as a result of this fraud, the Kronyaks. Those whose retirement plans were ruined, the Needles, the Taylors and the Kronyaks. Those whose children's education fund was lost, the Browns. Those whose family relationships were imposed upon, here it's the Kronyaks and Browns. Those who have suffered actual physical and psychological health effects, the Taylors and the Needles. And from my observation at the civil trial of this matter also the Kronyaks.

I have seen their reaction and the devastation which this scheme to defraud has inflicted upon them. I read Mr. Neuberger's letter concerning the situation of the Taylors; the extreme psychological effect that this scheme and the loss of their life savings had upon them.

It is my conclusion that this section for a departure should be considered.

App. at 19–20.

These findings are not erroneous. If there is any place in sentencing guidelines analysis where a fact-finder is to be given considerable deference, it is here where the district court is called upon to assess the psychological impact upon victims.

■ The district court based its findings both upon evidence supplied by the record and its own observations. The district court looked to the seriousness of the offense and its impact upon the well-being of Astorri's victims and found that these circumstances warranted an upward departure. According to section 5K2.3, psychological injury is normally found where there is a chronic substantial impairment of a victim's mental functioning resulting in physical, psychological or behavioral symptoms. Both the Needles and the Taylors suffered psychological injury under this definition. The Needles lost their life savings and their suffering will continue indefinitely. Mrs. Needles has been forced to seek treatment for high blood pressure as a result of Astorri's scheme. She continues to be under a doctor's care. The Taylors also lost their life savings and an inheritance from Astorri's fraudulent dealings. Record evidence reveals that Mr. Taylor, already in poor health, displayed adverse physical and behavioral effects from those dealings.

The evidence supports the district court's findings that Astorri's victims suffered much more psychological injury than that normally resulting from the commission of a wire fraud offense. Where any one victim suffers substantial impairment, departure is justified under section 5K2.3. Here, at least Mrs. Needles and Mr. Taylor suffered extreme psychological injury. Thus, the court's section 5K2.3 findings are supported by the evidence and consequently are not erroneous.

### VII.

### CONCLUSION

We conclude that the district court correctly enhanced Astorri's offense level under the "vulnerable victim" adjustment, U.S.S.G. § 3A1.1, and correctly applied a two level upward departure for inflicting "extreme psychological injury" under section 5K2.3. We also conclude that the court properly treated the tax evasion and fraud counts as separate "groups," adding two levels for Astorri's tax evasion conviction under section 3D1.4(a). Nevertheless, we must vacate the judgment of sentence and remand this case for resentencing because the district court incorrectly increased Astorri's guideline sentence by four levels rather than two under section 2F1.1(b)(2). We hold that a scheme to defraud more than one victim which requires more than minimal planning may only result in a two point base offense level increase under U.S.S.G. § 2F1.1.

HUTCHINSON, Circuit Judge, concurring in part and dissenting in part.

I respectfully dissent from the Court's holding, explained in Part VI of its opinion, that the district court's two-level increase in Astorri's guidelines sentence offense level was proper because some of the victims of his fraud suffered "extreme psychological injury" as that term is defined in Guidelines § 5K2.3. Therefore, I would instruct the district court on remand to resentence Astorri under the guidelines by reducing his offense level an additional two levels. In all other respects I join the opinion of the Court.

I dissent from the Court's approval of a two level increase under § 5K2.3 for three reasons. First, I believe that the district court's finding that some of Astorri's victims suffered "extreme psychological injury" as that term is defined in Guidelines § 5K2.3 is clearly erroneous. Second, I believe that the reasons the district court gave for increasing Astorri's offense level by two for extreme psychological injury to some of his victims show that the district court misunderstands the relation of Guidelines § 5K2.3 on extreme psychological injury to Guidelines § 3A1.1 relating to increases where victims are especially vulnerable, § 3B1.3 relating to abuse of trust and § 2F1.1(b)(1)(H) relating to amount of monetary loss. Finally, I believe that the district court's reliance on the severity of the economic loss some of Astorri's victims suffered because of their age, financial circumstance or the relation between Astorri and his fiancee's family are all adequately dealt with in the guidelines sections mentioned.

A departure under § 5K2.3 is not justified when the harm to a convict's victims and the nature of his conduct are adequately considered in other guidelines. *See* 18 U.S.C.A. § 3553(b) (West Supp.1990); Guidelines § 5K2.0 ("Where ... the applicable offense guideline and adjustments do take into consideration a factor listed in this subpart, departure from the applicable guideline range is warranted only if the factor is present to a degree substantially in excess of that which ordinarily is involved in the offense."); *United States v. Uca,* 867 F.2d 783, 786–87 (3d Cir.1989). Determinate sentencing under the guidelines requires separation of the factors for consideration in departures from those already taken into consideration elsewhere in the guidelines.

With these points in mind I turn to a consideration of the circumstances under which the guidelines permit an upward departure for "extreme psychological suffering." [1] Guidelines § 5K2.3, quoted by the Court, typescript at 13, permits an upward departure for psychological suffering only "[i]f a victim ... suffered psychological injury *much more serious than normally resulting* from commission of the offense...." (emphasis added).

Section 5K2.3 goes on to say that this level of severity normally is reached "only when there is a substantial impairment of the intellectual, psychological, emotional, or behavioral functioning of a victim, when the impairment is likely to be of an extended or continuous duration, and when the impairment manifests itself by physical or psychological symptoms or by changes in behavior patterns."

The only evidence that the district court referred to in support of its decision to increase Astorri's offense level by two under Guidelines § 5K2.3 was its own observations, some lay opinions about the victims' medical problems, the advanced age of some of the victims and the severe impact the loss of their lives' savings and one family's home had on their plans for retirement or their children's education.

The district court's conclusion that the Kronyaks, the Taylors, the Rosses and the Needles suffered extreme psychological injury is based largely upon its own observation of their reaction to their situation and the "devastation which this scheme to defraud has inflicted upon them." Appendix (App.) at 20. It had before it no expert medical evidence to support its finding that they suffered "actual physical and psychological health effects," *see* App. at 20, manifested in "physical or psychological symptoms or by changes in behavior patterns" that substantially impaired their "intellectual, psychological, emotional, or behavioral functioning." *See* Guidelines § 5K2.3.

Besides its own observations, the only evidence the district court referred to in support of its conclusion that some of Astorri's victims had suffered "actual physical and psychological health effects," *see* App. at 20, are taken from two letters and portions of the pre-sentence report. The first letter is from an attorney, Thomas Neuberger. He states that Mr. Taylor's health has not been good and the entire ordeal involving Astorri has been the source of a great deal of stress that on occasion caused Mr. Taylor to weep when he was in Mr. Neuberger's presence. *See* App. at 70. However, a letter that Mr. Taylor himself submitted makes it clear that the health problems referred to in Mr. Neuberger's letter as well as in the presentence report had either developed before Astorri's scheme took place or were unrelated to that scheme. *See* App. at 72.

Mr. Taylor had a heart attack in December, 1983, and open heart surgery in April, 1984, but this was before Astorri's scheme began. In June, 1986, cancerous lumps were removed from Mr. Taylor's chest, and in December, 1986, he had surgery to remove his gall bladder. There is no reliable

---

1. Because I do not believe any departure was appropriate, I do not reach or consider the issue of whether this particular departure was reasonable. Simply put, I believe our scope of review on this record is plenary. *See United States v. Uca,* 867 F.2d 783, 786 (3d Cir.1989). Moreover, even with respect to the district court's findings of fact, I cannot agree with the Court that any particular deference is due because of the nature of Guidelines § 5K2.3. Without regard to the particular guideline, the deference due is expressed in the standard "clearly erroneous."

evidence to show that the tumors or the gall bladder problem were related to Astorri's conduct.

The Needles wrote the second letter upon which the district court relied. In it, they state:

> Both of us suffered, Audrey H. Needles with high blood pressure (which was out of control and almost hospitalized) and is now on medication and under a doctor's care. Dennis Astorri's fraudulent act caused us considerable pain, anxiety, embarrassment and anger. We would still like our money to be returned to us!

App. at 85.

The evidence about the effect Astorri's fraud had on the Taylors and the Needles' health is insufficient to support the district court's conclusion that some of the victims suffered the kind of substantial and permanent physical, intellectual or behavioral impairments that Guidelines § 5K2.3 requires before an upward departure for extreme psychological injury is authorized. These unsupported lay statements are not reliable evidence of the kind required to support enhancement of a guidelines sentence. *See, e.g., United States v. Sciarrino*, 884 F.2d 95 (3d Cir.) (while hearsay is permissible in determining a guidelines sentence, it must have some degree of reliability), *cert. denied*, — U.S. —, 110 S.Ct. 553, 107 L.Ed.2d 549 (1989).

Likewise, I think the sentencing judge's own observations that the psychological trauma naturally resulting from the economic losses Astorri's fraud visited upon his victims and his profound betrayal of the Kronyaks and their daughter is insufficient to show objective symptoms of substantial and continuous intellectual, psychological, emotional or behavioral impairment. Those observations are conclusions that must be founded on reliable evidence under the guidelines. They are not themselves evidence.

Perhaps determinations of crime's effect on its victims would have been better left to the observations and sound discretion of the sentencing judge, but Congress has decided otherwise. *See Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 652,

102 L.Ed.2d 714 (1989). The Sentencing Commission has acted to implement Congress's decision when it confined the sentencing judge to a relatively narrow sentence range objectively determined on the basis of reliable evidence that particular effects accompany a particular crime. Even in departures, where a fairly large element of discretion is retained, facts grounded on reliable evidence must show that one of the reasons for departure is present.

I do not doubt that a person suffers psychologically when he loses his life's savings, let alone his home. However, I believe any economic loss a victim suffers is otherwise adequately taken into account under Guidelines § 2F1.1(b)(1)(H), adjusting the offense level for the amount of monetary loss. Likewise, I believe that the age of the victim is taken into account under Guidelines § 3A1.1, relating to vulnerable victims, a section which the district court correctly applied to enhance Astorri's sentence.

Astorri's conduct demonstrates a heartless willingness to trade on the affection of the woman he had promised to marry and the trust she and her parents placed in him while he secretly plundered the savings her parents had reserved against their old age. The common understanding of men and women of every time and place condemns Astorri as a despicable cad. However, the Sentencing Commission has taken Astorri's truly outrageous and cynical manipulation of his fiancee's family for his own private gain into consideration in Guidelines § 3A1.1, relating to vulnerable victims, and Guidelines § 3B1.3, relating to abuse of trust.

Guidelines § 5K2.3 focuses elsewhere in permitting enhancement for extreme psychological suffering. There is no reliable evidence in this record to show such an injury. Although the evidence here is sufficient to support the district court's finding that Astorri's victims were vulnerable and to show that his scheme included the elements of an abuse of trust, it was not sufficient to show any of Astorri's victims suffered "extreme psychological injury"

**1062**

and so permit enhancement of his sentence under § 5K2.3.

By using factors adequately taken into account elsewhere in the guidelines as a basis for an enhancement under Guidelines § 5K2.3, the district court erred when it added two levels to Astorri's offense related conduct for his victims' extreme psychological suffering. *See Uca*, 867 F.2d at 786–87.

Accordingly, in addition to the reduction of the offense level the Court orders, I would reverse the district court's two level upward departure under Guidelines § 5K2.3 and remand for resentencing in accordance with the Guidelines at an offense level four steps below the level the district court used at Astorri's initial sentencing.